## Chilcoat's Appeal.

1. The right to claim the benefit of the exemption law may be waived by undue laches.

2. Where, in an assignment for the benefit of creditors, the assignor reserves to himself the benefit of the $300 exemption law, but neither selects any specific property nor demands an appraisement, it is too late for him to make his claim after the property has all been sold, a large part of the proceeds paid out in satisfaction of·debts of record, and the assignee is about to file his account.

3. A. made an assignment for the benefit of creditors, reserving $300 exemption. He never had any specific property set apart to him, nor demanded an appraisement. The assignee subsequently sold both the real and personal property, and paid the proceeds of the former to holders of judgments against the assignor, some of which contained waivers of the exemption law. The assignor made no claim to these proceeds, and stated to various parties that he did not intend to claim his exemption. Several years afterwards, as the assignee was about to file his account, he realized a small sum on certain building association stock belonging to the assignor. From this sum and a balance still in the assignee's hands the assignor claimed his exemption. *Held,* that the assignor's claim was barred by laches.

4. Peterman's Appeal, 26 P. F. S. 116, distinguished.

May 22d. 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. PAXSON, J., absent.

APPEAL from the Court of Common.Pleas of *Huntingdon county :* Of January Term 1882, No. 131.

This was an appeal by B. F. Chilcoat from a decree of said court confirming the report of the auditor appointed to distribute the balance in the hands of said B. F. Chilcoat as assignee of James S. Chilcoat.

On January 31st 1876, James S. Chilcoat executed an assignment for the benefit of creditors to B. F. Chilcoat. By the deed, which was duly recorded, the assignor conveyed all his estate, real and personal, excepting and reserving to himself three hundred dollars' worth of property, "allowed him by·acts of Assembly, to be appraised and set apart to him according to law." The assignee filed his account in 1880, to which exceptions were filed, and J. R. Simpson, Esq., appointed auditor to hear said exceptions and make distribution.

Before him it appeared that the real and personal property of the assignor was duly appraised and sold, and the fund realized from the sale of the real estate paid by the assignee in discharge of certain judgment liens, some of which contained a waiver of the exemption laws.

At the time of making the assignment the assignor held five shares of a certain Building & Loan Association stock, upon

which he had borrowed $600, giving a judgment for the same. After the assignment the assignee paid off this judgment, with funds from the estate, and took an assignment of the five shares in his own name, thereafter paying the monthly dues on the same, under an agreement with the assignor that when the stock was run out and paid off it should be divided proportionally. Subsequently the assignee stopped making these payments, and drew from the association $280, no portion of which was included in his account.

The auditor, accordingly, surcharged him within $125 and interest, being the amount of this fund due the estate.

The assignor thereupon presented his claim before the auditor for his $300 exemption, from this fund and a small balance of the assigned estate still in the hands of the assignee. This claim was resisted by the assignee and certain creditors, on the ground that it had been abandoned, and was not made according to law, since no appraisement had been demanded, and the claim was for cash in the hands of the assignee, derived from the sale of the assigned property, and was delayed until a large part of this money had been paid out in satisfaction of claims against the estate. In reference to this the auditor reported as follows :

"From the foregoing testimony, these facts seem to be clearly established, viz.: that James S. Chilcoat reserved $300 in his deed of assignment; that he did not have an appraisement of property for that amount, setting the same apart to him ; that he more than once declared that he would not, or could not, claim the $300 exemption, because of the existence of certain exemption notes; and that at a later period he re-asserted his claim, which was refused. Another fact is now apparent, to wit: that the non-exemption notes, on which judgment had been entered at the period of the assignment have been paid (except one small judgment), and there would still be a balance in the hands of the assignee after the payment of this small judgment . . . .

" If the present question related to a debtor's failure to demand an appraisement from a sheriff or officer about to execute a writ, this assignor would be cut out beyond a doubt . . . . but the supreme court, in Peterman's Appeal (26 Sm. 116), draw a clear line of distinction between an execution debtor and an assignor." Relying on this case, the auditor accordingly reported in favor of the assignor's claim, and awarded him the balance of $266.50 remaining in the assignee's hands.

Exceptions filed to this report were dismissed by the court, and a decree entered by Dean, J., confirming the report; whereupon the assignee, B. F. Chilcoat, took this appeal, assigning for error the decree of the court.

[Chilcoat's Appeal.]

*John M. Bailey* and *L. H. Beers*, for the appellant.—
It is well settled that the omission of the debtor to have
property appraised bars any claim upon the proceeds for exemp-
tion : Miller's Appeal, 4 Harris 300. Even a demand for an
appraisement is not sufficient, unless carried out : Mark's Appeal,
10 Casey 36 ; Nyman's Appeal, 21 Sm. 447. In this case there
was not only an omission to have the property appraised, but a
declaration to the assignee and others that the debtor would not
claim any exemption. Having made this election, the assignor
could not reconsider without the consent of his creditors :
Indiana Co. Dep. Bank's Appeal, 9 W. N. C. 270.

*H. E. Shaffer* and *B. J. Devor*, for appellee.—Neither
the act of April 9th 1849, nor of April 8th 1859, fixes a
time when the claim for exemption must be made. There-
fore, since the assignor did not demand an appraisement of any
real or personal estate, and did not choose to have $300 worth of
household furniture set apart to him under the act of 1864, he
had a right under the act of 1859 to demand $300 in money
from the assignee, according to the reservation in the deed, at
any time before the filing of the account and the distribution of
the funds among the creditors. Where $300 exemption is reserved
in a deed of assignment, it does not pass to the assignee at all
unless, from the nature of the property, it is necessarily inter-
mingled with that which does pass : Myer's Appeal, 78 Pa. St.
452. By the deed of assignment the assignor gave notice of his
intention to *retain*—not claim—$300 allowed him by statute.
This was record notice to all interested parties.

Mr. Justice GREEN delivered the opinion of the court,
October 2d 1882.

The amount awarded to the assignor ($266.50) under his
claim for $300 exemption was made up in part of the value of
five shares of Building & Loan Association stock, and in part
of other moneys of the assigned estate in the hands of the
assignee. The Building & Loan Association stock was owned
by the assignor at the time of the assignment, and passed to the
assignee by force of the assignment. Payments were made both
by the assignor and assignee to keep it alive after the assign-
ment, but those payments were refunded, and constitute no part
of the present fund. The whole of the fund is therefore the
product of portions of the assigned estate as it originally came
to the assignee. The assignor reserved generally in the assign-
ment "three hundred dollars' worth of property of the assignor
allowed him by act of assembly to be appraised and set apart to
him according to law." This was a sufficient reservation to entitle
the assignor to retain and have set apart to him any of the

[Chilcoat's Appeal.]

assigned property or money, being the proceeds thereof, to the amount of three hundred dollars. In point of fact no appraisement of any property or money was ever made, nor was any specific property in any manner set apart to the assignor. The appraisers were not asked to appraise any property or money to the assignor. The latter admits in his testimony that he did not designate the property he wanted set apart. He says, "I never designated to the assignee the property that I wanted set apart to me." The evidence clearly proves that the assignor neither made an election nor demand of any property at the appraisement, or at the sale of the personal or real estate, and the auditor has practically so found. The assignor himself testified as follows: "My recollection now is that the first time I demanded it was after the real estate had been sold : I might have demanded it out of the personal property, but I let that go to pay the emergencies, and intended to take it out of the real estate, when it was sold." In reality no claim was made to take the money out of the proceeds of the real estate as such. It was also found by the auditor, and was abundantly proved, that the assignor, at different times and to different persons, after the assignment, did declare that he would not or could not claim the benefit of the $300 exemption, because he had given judgment notes waiving the exemption. The deed of assignment was executed on January 3d 1876. The precise dates of the sales of the real and personal estates are not given in the auditor's report, nor in the printed testimony of the witnesses. But the assignee testified that no demand for the $300 exemption was made to him until in 1880, which was three or four years after he had disposed of all the property, real and personal. The auditor admits that if this were an ordinary case of a claim for the benefit of the exemption under an execution it would be entirely too late. But he considered that the case was governed by the decision of this court in Peterman's Appeal, 26 P. F. S. 116, and on the authority of that case he allowed the claim, and awarded the fund to the assignor. In this we think he was in error. The facts upon which that decision was based were quite different from those that are found in the present case. There the assignor exercised his right of election after the assignment. He selected certain personal property which was appraised at $99.88, and set apart for his use. He was therefore still entitled to the remainder of the $300. Afterward he became entitled to a distributive share of the proceeds of certain real estate of which his mother had died seised. His own assigned estate had been distributed to his creditors by his assignee, who had fully settled his account and made distribution. On the distribution of the proceeds of his mother's estate he made claim to the share coming to him to the extent of the balance necessary to

[Chilcoat's Appeal.]

make up his $300 exemption. His assignee claimed the money in opposition to him. As this share existed in the form of money in the hands of the trustee, for the sale of his mother's real estate, no appraisement of it was necessary. His claim was made as soon as he had the right to demand and receive it, and he was therefore not guilty of laches in making the demand.

It was for these reasons, and on these principles, that this court held he was entitled to the money. We certainly did not say, or mean to say, in that case, that a demand was not necessary, or that the right to claim the benefit of the exemption could not be waived by undue laches. The decided cases on those subjects were not overruled, or even discussed. On the contrary, we recognized the facts that the benefit of the exemption was regularly claimed, that personal property was actually selected, appraised and set apart, to a certain amount, and that as to the balance of the exemption it was claimed as soon as the right to demand and receive it arose. But all these facts are lacking in the present case. While it is true there was a general reservation of the three hundred dollars' exemption in the assignment, there was at no time any selection of property or appraisement made, and no notice of a claim to the assignee until several years after the real and personal property had all been sold and the proceeds of the former had all been paid out in discharge of liens. It was positively testified, both by the assignee and others, that the assignor had repeatedly declared that he would not claim the benefit of the exemption; but we do not dwell upon that, because the duty of making the claim is an affirmative one, resting upon the assignor, and it must be shown by him, in case of dispute, that he exercised his right, and within a reasonable time. There is no proof that he did this in the present case. The assignee can not know, unless he is notified to that effect, what property or money he shall set apart or pay to the assignor; and in the absence of such notice it is his duty to administer and distribute to the creditors all the estate that has come to his hands and is needed for the payment of debts. It is too late for the assignor to make his claim after the property has all been sold and converted into money, a large part of the proceeds paid out in satisfaction of debts of record, and the assignee is about to file his account. Such was the condition of things when the claim of the assignor was first formally made, and we are very clear that such laches defeats the right to make the claim. There is no statute, and no decided case, that permits it in such circumstances. It is true, the act of 8th April 1859, Purd. 638, pl. 26, which gives the right to retain notes, money, or other securities, does not fix any time within which the right must be exercised; but neither does the act of 1851, Purd. 416, pl. 60; and yet we held, in Davis's Appeal, 10 Cas. 256, that this act

[Kopf v. Utter.]

must receive a construction, in this respect, similar to that given to the debtors' exemption act of 1849, under which it has been held that the claim must be made so as to cause no delay, and before expense has been incurred. We cannot find in the evidence any excuse or justification for the long delay on the part of the assignor in preferring his demand for the benefit of the exemption reserved in the deed, and are therefore of opinion that his claim, at the time it was made, was barred by his laches.

The decree of the court below is reversed, and the record is remitted for further proceedings; the costs of this appeal to be paid by the appellee.