### Hudson & Collins v. McGuire.

(Decided June 1, 1920.)

### Appeal from Lee Circuit Court.

1. Mines and Minerals—Deeds—Grant of Mineral Rights.—A deed that conveyed "all the minerals, except stone coal, with necessary right of ways and privileges for prospecting, mining and smelting" did not clearly grant oil or gas rights although such rights would pass under a deed granting "mineral" rights without limiting or qualifying words.

2. Deeds—Construction of—Extrinsic Evidence—When Admissible.— Where the granting clause in a deed is so ambiguous as to leave room for reasonable difference of opinion as to the estate granted, or where the granting clause contains limiting or qualifying words sufficient to make doubtful the extent of the grant, extrinsic evidence is admissible to show the situation of the parties, the circumstances surrounding the execution of the deed and the intention of the parties.

3.  Deeds—Construction of—Extrinsic Evidence—When Not Admissible.—When the instrument is fair on its face and free from ambiguity, the intention of the parties where the rights of purchasers will be affected must be gathered from an inspection of the instrument itself without the aid of extrinsic evidence.

4.  Mines and Minerals.—Definition of the Word "Minerals."—The word "minerals" in a conveyance, without qualifying or limiting words, will pass to the grantee not only coal, iron and other like substances, but also the oil and gas; and in the construction of such a deed extrinsic evidence will not be admissible as against third parties to show that the parties to the instrument did not intend to convey oil or gas rights or privileges.

5.  Deeds—Construction of—Rights of Purchaser for Value.—A purchaser for value, without actual notice of an infirmity in a conveyance in his chain of title, need only look to the recorded instruments, and if they are fair on their face and free from ambiguity, he may rest assured that the safety of his title will not be affected by the intention of the parties to an instrument of which he does not have actual notice and which is not expressed in the instrument itself.

6.  Deeds—Construction of—Burden of Proof.—Where a controversy comes up between adverse claimants under a deed and the intention of the parties to the deed becomes an issue, the burden of proof will be on the plaintiff to show by clear and convincing evidence what their intention in its execution was.

W. H. FLANNERY and DAVIS M. HOWERTON for appellants.

H. S. McGUIRE and J. T. METCALFE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—Reversing.

In April, 1891, Henry Fraley executed and delivered to W. E. Casto the following deed: "This deed between Henry Fraley, of Lee county, state of Kentucky, of the first part, and W. E. Casto, of Lee county, Kentucky, of the second part, witnesseth, that the said party of the first part in consideration of seventy-five dollars, the receipt of which is hereby acknowledged, do hereby sell, grant and convey, to the party of the second part, his heirs and assigns, the following described property, viz.: All of the minerals (except stone coal), with necessary right of ways and privileges for prospecting, mining and smelting on my tract of land, lying on the waters of Hell creek, a tributary of the Kentucky river, in Lee county, state of Kentucky. (Following this is a description of the land.) To have and to hold the same, with all the appurtenances thereon, to the second party, his heirs and assigns forever, with covenant of general warranty,

Fraley and Casto are dead, and this controversy involves the single question whether the deed passed the oil and gas rights and privileges to Casto.

Hudson and Collins, who have a regular title from the heirs of Fraley, assert that the oil and gas rights and privileges were not conveyed by him to Casto, and brought this suit against McGuire, a remote vendee of Casto, who claims that the oil and gas privileges did pass under the deed, to have their alleged title to the oil and gas rights quieted.

In their petition, they averred: "That the oil and gas privileges and rights were not conveyed by Henry Fraley, deceased, to W. E. Casto under and by virtue of the Casto deed and that by reason of the oil and gas rights and privileges not having been conveyed to W. E. Casto in said deed, bis heirs and assigns and remote grantees received no interest in said oil and gas rights and privileges and, therefore, the defendants are not now the owners thereof. The plaintiffs state that when the said Henry Fraley, deceased, made the conveyance above referred to to the said W. E. Casto, the oil and gas rights and privileges did not pass to Casto under the Casto deed, but were reserved unto the said Henry Fraley, and, at the time of his death, descended to his children. They state that at the time Henry Fraley made the conveyance above referred to to W. E. Casto, it was not intended by either Henry Fraley, grantor, or W. E. Casto, grantee, that the oil and gas rights and privileges should be conveyed. At that time it was not contemplated by either of the parties to said deed that oil and gas existed under said tract of land. The only minerals which were in the minds of the grantor and grantee and the only minerals which passed in the said Casto deed were such precious minerals as gold and silver. At that time it was generally believed that Swift's silver mine was located on the Henry Fraley tract of land and silver alone was intended to be conveyed to said Casto in said deed." To this petition, the lower court sustained a general demurrer, and the plaintiffs have prosecuted this appeal.

It will be seen that the matter in controversy depends on the construction of the clause in the deed conveying to Casto "all of the minerals (except stone coal) with necessary right of ways and privileges for prospecting, mining and smelting on my tract of land lying on the

waters of Hell creek," taken in connection with the averments of the petition which, on this appeal, we must assume to be true: "That at the time Henry Fraley made the conveyance above referred to to W. E. Casto, it was not intended by either Henry Fraley, grantor, or W. E. Casto, grantee, that the oil and gas rights and privileges should be conveyed. At that time it was not contemplated by either of the parties to said deed that oil and gas existed under said tract of land. The only minerals which were in the minds of the grantor and grantee and the only minerals which passed in the said Casto deed were such precious minerals as gold and silver. At that time it was generally believed that Swift's silver mine was located on the Henry Fraley tract of land and silver alone was intended to be conveyed to said Casto in said deed."

On behalf of the plaintiffs, the argument is: First, that the language of this deed, and particularly the clause in controversy, shows on its face that the conveyance was limited to such minerals, excepting stone coal, as might be mined and smelted, and hence did not grant or convey the oil or gas rights or privileges; and second, that even if it could not be held from an inspection of the deed itself that the grant excluded the oil and gas rights and privileges, the clause in controversy is at least so ambiguous as to make it competent for the plaintiffs to show if they could by evidence the situation of the parties at the time the deed was made and the circumstances surrounding its execution for the purpose of establishing that it was only intended by the parties that the deed should convey such minerals as might be mined and smelted and not within their contemplation that the oil and gas rights or privileges should be granted.

On the other hand, it is insisted by counsel for defendant that there is no ambiguity in this clause or reasonable room for difference of opinion as to its meaning or the nature of the minerals it was intended to convey; that as the deed conveyed all the minerals, except stone coal, and the word "minerals" includes oil and gas, extrinsic evidence is not admissible for the purpose of showing what the parties intended should be granted in a controversy between strangers to the original transaction.

It is elementary law that the intention of the parties in the execution of deeds and other like instruments controls the construction, and that when the instrument is fair on its face and free from ambiguity, their intention must be gathered from an inspection of the instrument itself without the aid of extrinsic evidence, but if the instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in the construction of the instrument, although no effort is made to reform it on the ground of fraud or mistake.

As said in 8 R. C. L., page 1041, "the tendency of modern decisions is to disregard technicalities and to treat all uncertainties in a conveyance as ambiguities, subject to be cleared up by the resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, the subject matter and the situation of the parties as of that time." To the same effect is 18 Corpus Juris, page 279.

In Devlin on Deeds, vol. 2, section 840, the rule is stated thus: "Again, every provision, clause, and word in the same instrument shall be taken into consideration in ascertaining the meaning of the parties, whether words of grant, of covenant, or description, or words of qualification, restraint, exception, or explanation. Again, every word shall be presumed to have been used for some purpose, and shall be deemed to have some force and effect, if it can have. And further, although parol evidence is not admissible to prove that the parties intended something different from that which the written language expresses, or which may be the legal inference and conclusion to be drawn from it, yet it is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, buildings, passages, water courses, and other local objects, in order to give a definite meaning to language used in the deed, and to show the sense in which particular words were probably used by the parties, especially in matters of description. Where the meaning is doubtful, evidence as to the acts of the parties may be admitted to show the intent. But where the terms of the deed are plain and intelligible, and the instrument can operate, evidence as to the acts of the parties claiming under it is not admissible. The intent, when clearly expressed, cannot be altered by evidence of extraneous circumstance."

In Bain v. Tye, 160 Ky. 408, this court said: "It is an elementary rule in the interpretation of deeds that the intention of the parties should be effectuated, and in doing this a liberal construction is given to deeds inartificially and untechnically drawn. The intent must primarily be gathered from a fair consideration of the entire instrument and the language employed therein, and should be consistent with the terms of the deed, including its scope and subject matter. Where the description of the property intended to be conveyed is ambiguous, the identity of such property must be gathered from the intention of the parties, as shown by the instrument itself and the accompanying circumstances, such as those surrounding and connected with the parties and the land at the time."

In Thompson v. Thompson, 2nd B. Monroe 161, the court said: "The intention of the parties is a fundamental, and should be a governing principle, in the construction of all instruments, and when the language is ambiguous or of doubtful import, it is allowable to look behind the instrument into the state and condition of the parties, their motive, object, aim and end in its creation, as means of leading to a proper understanding of its import."

In Marshall v. Piles, 3rd Bush 249, the court said: "To ascertain the intention of the parties is the only aim of interpretation; and when the terms of a written contract are ambiguous, the subject matter and presumed object of the parties are admissible and pertinent considerations; and the words employed should altogether be harmonized as far as possible and interpreted consistently with practical common sense."

In the light of these principles, we will now look more carefully into the clause in question for the purpose of determining whether on its face oil and gas was excluded from the grant, or if not whether it is sufficiently uncertain and ambiguous to authorize as between third parties a resort to extrinsic evidence for the purpose of arriving at the intention of the parties in its execution.

It may also be conceded at the very beginning of this enquiry that the word "minerals" without qualifying or limiting words in an instrument like this would pass to the grantee not only coal, iron and other like substances that are commonly understood by people generally to be minerals, but also the oil and gas, although

it is not amiss to here observe that in 1891, when there had been little, if any, oil or gas development in this state, or even now when great quantities of both have been discovered in some sections, there are few people outside of the legal profession and those interested in mineral, oil and gas development who understand or appreciate that the word "minerals" includes oil and gas, because in common every day usage oil and gas would not be spoken of as a mineral. "Minerals" as commonly understood, would mean such substances as are reduced to domestic or commercial use by what are generally known as mining methods, and mining methods are not employed, at least in this state, in the production or manufacture of oil or gas.

This court, however, as well as others, had definitely ruled that the word "minerals" includes oil and gas and, therefore, if this clause had read "all of the minerals, except stone coal, with necessary rights of way and privileges for prospecting," and there had been omitted from it the words "mining and smelting," there could be no doubt that as between third parties for value, as in this case, the deed would be construed as conveying the oil and gas, and extrinsic evidence would not be admissible to show that the parties did not so intend. Scott v. Laws, 185 Ky. 440. It would then have been legally speaking free from ambiguity and extrinsic evidence would not be admissible to show the intention of the parties.

But this instrument does not stop with the conveyance of minerals, except stone coal, and the necessary right of ways and privileges for prospecting, or leave undefined or unexplained the nature of the minerals intended to be conveyed. It recites that "all of the minerals, except stone coal, are conveyed, with necessary right of ways and privileges for prospecting, mining and smelting," and it is the use of the words "mining and smelting" and the failure to use the words "oil or gas," or any other words that would have a tendency to show that the right to explore and develop the land for oil and gas purposes was intended to be granted that creates a reasonable doubt whether it was intended to convey any minerals, except those of such nature as to render necessary in their production for marketable purposes the process of mining and smelting.

The words "mining and smelting" are appropriate in connection with the production of many minerals other than oil and gas, but they have no place in a grant of oil or gas rights or privileges, and the use of these words, as well as the absence of suitable words to show that oil or gas was intended to be conveyed, was sufficient to put a purchaser under the deed on notice that the grant did not include oil or gas.

The Ohio court had before it in Detlor v. Holland, 57 Ohio St. 492, 40 L. R. A. 266, a case presenting facts very similar to those found in this record. In that case one Francis Deaver made a conveyance of mining rights to Michael Deaver in a deed containing the following clause: "Do hereby grant, bargain, sell and convey to the said Michael L. Deaver, his heirs and assigns, forever, all the coal of every variety, and all the iron, ore, fire clay, and other valuable minerals in, on, or under the following described premises, together with the right in perpetuity to the said Michael L. Deaver, or his assigns, of mining and removing such coal, ore or other minerals; and the said Michael L. Deaver, or his assigns, shall also have the right to the use of so much of the surface of the land as may be necessary for pits, shafts, platforms, drains, railroads, switches, side tracks, etc., to facilitate the mining and removing of such coal, ore, or other minerals, and no more."

Afterwards Michael Deaver, claiming to be the owner of the oil and gas privileges in the land conveyed, sold and conveyed the same to Taylor, who in turn conveyed to Detlor. After this, the children of the grantor, Francis Deaver, acting on the assumption that the conveyance did not pass the oil and gas rights and privileges, conveyed the same to Holland; and thereafter litigation followed between Detlor and Holland, each claiming the oil and gas in the land under the conveyance mentioned.

In holding under the law and facts that oil and gas did not pass by the grant, the court said: "The conveyance in question is what is usually known as a mining right, and grants and conveys all the coal of every variety, and all the iron ore, fire clay, and other valuable minerals in, or under the said lands. Do the words 'other valuable minerals' include petroleum oil? The deed of the mining right was made in February, 1890,

and it must be construed in the light of the oil develop-
ments as they then existed in the vicinity of the lands.
Francis G. Deaver, the grantor in the mining right, re-
sided in Wisconsin, and there is nothing to show that
he had any knowledge of the existence of oil in or near
these lands. Oil was then produced in small quantities
within from 10 to 20 miles of the lands, but there is
nothing to show that the parties to the conveyance had
any knowledge thereof. Said mining right grants in
perpetuity the right 'of mining and removing such coal,
ore or other minerals, with the right to the use of so
much of the surface of the land as may be necessary for
pits, shafts, platforms, drains, railroads, switches, side-
tracks, etc., to facilitate the mining and removal of such
coal, ore, or other minerals, and no more.' The inci-
dents here granted are all such as are peculiarly appli-
cable to the mining of minerals in place, and not to such
as are in their nature of a migratory character, such as
oil or gas. Nothing is said about derricks, pipe lines,
tanks, the use of water for drilling or the removal of
machinery used in drilling or operating oil or gas wells.
A rule of construction in such cases, which seems correct,
is found in the following from the Law of Mines and
Mining in the United States, by Barringer and Adams
(p. 131): 'In determining what is included in a lease,
the familiar rules of construction are applied. The
grant is construed most strongly against the grantor.
The whole contract must be considered in arriving at
the meaning of any of its parts. Terms are to be under-
stood in their plain, ordinary, and popular sense, un-
less they have acquired a particular technical sense by
the known usage of the trade. They are to be construed
with reference to their commercial and their scientific
import. This rule is of special importance when the
question arises whether a specific mineral is included in
a general designation.' The words 'other minerals,'
or 'other valuable minerals,' taken in their broadest
sense, would include petroleum oil; but the question here
is: Did the parties intend to include such oil in the min-
ing right? Talking all the terms of the conveyance in the
light of the surrounding circumstances, and in view of
the above rule of construction, and upon authority of
the case of Dunham v. Kirkpatrick, 101 Pa. 26, 47 Am.
Rep. 696, we conclude that the title to the oil did not
pass under said conveyance, but remained in the owner

of the soil, and upon his death passes to his heirs. There is nothing to show that it was the intention of the parties that oil should be included in the word 'minerals,' and the easements granted in connection with the mining right, are not applicable to producing oil, and show that oil was not intended to be included in the conveyance. If it had been, apt words would have been used to express such intention.''

In McKinney's Heirs v. Cen. Ky. Nat. Gas Co., 134 Ky. 239, the question before the court was whether conveyances granting coal and mineral interests and privileges passed the right to natural gas, and the court in holding that it did not said: ''Therefore, the only question to be considered is whether the conveyances referred to include natural gas. It will be observed that gas is not specifically mentioned in either of the deeds; but in all of them the word 'minerals' is used, which counsel for the parties concede, when given its broadest meaning, includes natural gas. But the question to be determined is: What was the intention of the parties to the deeds at the time they were made: Did the grantors understand at that time that oil and gas were minerals and would pass with the other minerals named in the conveyances; and did they intend to convey the gas? In other words, did the minds of the parties to the conveyances meet upon the questions: Did the one understand that he was conveying, and the other that he was purchasing the gas thereunder? If not, the gas did not pass with the conveyances. The solution of this question depends upon the language used in the conveyances and the facts and circumstances surrounding the parties at the time they made them. If natural gas was in the minds of the parties at the time of the execution of the conveyances, we would expect to find expressions or terms which would refer specifically to the rights and privileges necessary to the development of it. We erect derricks and drill for gas and pipe it to market; but there is not a grant of a right to the use of timber in erecting derricks, or of an easement for pipe lines, or with reference to the removal of machinery used in drilling. In fact, there is not a word in the conveyance giving the parties a right to exercise any of the privileges necessary in drilling for natural gas. The word 'minerals,' as used in the conveyances, taken in its broadest sense, would include natural gas; but the question is: Did the parties intend

.to include it in the conveyances? There is nothing to show that it was the intention of the parties that natural gas should be included by the word 'minerals,' and the easements granted in connection with the rights therein conveyed are not applicable to the production of natural gas, which shows that it was not intended that gas was to be included in the conveyances."

It is true that the words of the grant in these two cases are different from the words of the grant in the deed under consideration, but the cases are pertinent authority on the question that where the instrument is ambiguous, resort may be had in a controversy between third parties claiming under it to extrinsic evidence for the purpose of showing the intention of the parties to it.

In Kentucky Diamond Mining & Developing Co. v. Kentucky Transvaal Diamond Company, 141 Ky. 97, the question was whether the right to explore for diamonds was granted in a deed that conveyed: "All the mineral and timber on the following described tract or parcel of land with the following exceptions: (Here follows boundary), excluding all the rail timber and coal for the use of the farm and the Isons reserve the right to clear any land .within said boundary granting the said party of the second part the right of ingress and egress hereto with stone for building purposes, and to have and to hold the above described mineral, timber, etc., his heirs and assigns forever, and the party of the first part warrants and defends the title aforesaid."

And the court, in holding that the deed conveyed all the minerals, including diamonds, said: "The deed here simply conveys 'all the mineral.' These general words aptly include every kind of mineral found on the land. Would it be doubted that if gold had been discovered that it would have passed by this deed, although Ratcliff at the time thought he would find silver? Or if he had failed to find silver and had found lead, would it be doubted that this would pass by the deed? It may be true that when the deed was made the parties did not know what minerals were under the land, but the fact that they did not have diamonds in mind, in no manner affects the conveyance when by it they conveyed all the mineral. When the language of the deed is broad enough to cover everything that may be found on the land, it is not material to the effect of the deed, that the parties in fact contemplated at the time that a particular thing

might be found on the land. They well knew it was a matter of doubt what would be found. To make the tests, shafts had to be sunk, and the different strata had to be examined. What would be found they could only guess, and when under these circumstances, the parties conveyed all the mineral, the grantee is entitled to the precious stones found no less than he would be if he had found platinum or radium, which is perhaps more precious than diamonds.''

Adopting the views expressed in the authorities, referred to, which are in harmony with our own views of the matter, it is very clear that as between Fraley and Casto, or volunteers claiming under or through them, it would be competent to show by extrinsic evidence that it was not intended by either of the parties to the conveyance that oil or gas rights and privileges should pass under the grant. But a different question arises when a controversy comes up between purchasers for value as to the meaning and construction of a deed in the chain of title under which both of them claim, as in this case. It is, of course, of the highest importance that the stability and integrity of conveyances on which the right and title to practically all landed interest depends should be carefully preserved, and especially is it indispensable to the safety of purchasers for value, who have the right to look to and be governed in their dealings by the words of the recorded instrument that nothing should be said by courts of last resort that would cast doubt on the sufficiency of a grant that on its face is free from obscurity or doubt.

It is equally plain that it would be destructive of the security of deeds if the rights of purchasers for value should be made to depend on the intention in the mind of remote vendors that was not expressed in the conveyance, and of which intention they had no actual notice.

A purchaser for value without actual notice of an infirmity in a conveyance in his chain of title need only look to the recorded instruments, and if they are fair on their face and free from ambiguity, he may rest assured that the safety of his title will not be affected by the intention of the parties to instruments of which he does not have actual notice and which is not expressed in the instrument itself.

When, however, the conveyance in a chain of title under which a purchaser for value claims shows on its

face it is so ambiguous as to leave room for reasonable difference of opinion as to what was granted, or when the grant contains limiting or qualifying words sufficient to cast reasonable doubt on what was intended to be granted, the purchaser will be chargeable with notice of this ambiguity, and the effect of these limiting or qualifying words, and his rights, if controversy comes up, must be left to be determined by the courts, and in such states of case the intention of the parties to the instrument may be inquired into.

Undoubtedly the parties to a deed have the right to use any explanatory or modifying words they please to make plain their intention, and if these modifying or explanatory words change the meaning or effect of other well defined words the words so modified or explained should be given the meaning ascribed to them in the instrument by the parties to it.

To repeat, evidence of the intention of the parties to the instrument is only permissible when the deed is plainly ambiguous and from its reading it is doubtful what the instrument grants or conveys. If, on its face, it is free from doubt, ambiguity, or uncertainty, then no amount or character of evidence, except in a controversy between the parties to the instrument or persons who occupy the same position as would such parties, will be competent to show that some other intention or one foreign to that expressed in the deed was in the minds of the contracting parties.

The principle laid down in the cases of the Kentucky Diamond Company v. Kentucky Transvaal, 141 Ky. 91; and Scott v. Laws, 185 Ky. 440; is not overruled or even questioned. On the contrary we expressly adhere to and approve what was said in each of these cases. Nor is there anything in this opinion that conflicts with what was said by the Supreme Court of the United States in Burke v. Southern Pacific Railroad Co., 246 U. S. 667; 58 Law Ed. 1526.

Applying now the principles stated to the deed in question, we are of the opinion that it is so ambiguous and uncertain on its face, and contains such limiting and qualifying words, as to put purchasers for value on notice that it may not have conveyed oil or gas rights and privileges and, therefore, it was permissible for the plaintiffs to show, if they could, that both parties to this deed intended that the meaning of the word "minerals"

should be limited so as to include only such mineral substances as are ordinarily subjected to processes of mining and smelting in their production and manufacture for domestic or commercial purposes.

Accordingly, we think the demurrer to the petition should have been overruled, and that the plaintiffs should be permitted to show, if they can, by extrinsic evidence the situation of the parties, the circumstances surrounding the execution of the deed, and that it was not intended by the grantor or grantee that oil or gas rights or privileges should pass under it; and that if an issue of fact, under appropriate pleadings, is made on this question, the burden of proof will be on the plaintiffs to make out their case by clear and convincing evidence, and the rights of the parties on a final hearing will be determined by the evidence considered in connection with the deed from Fraley to Casto.

Wherefore, the judgment is reversed with directions to overrule the demurrer, and for proceedings not inconsistent with this opinion. Whole court sitting, Judge Sampson dissenting.