## Ogle Coal Company v. Martin.

(Decided December 13, 1929.)

JOS. D. HARKINS for appellant.

COMBS & ALLEN and MAY & ALLEN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On the 25th day of November, 1921, the appellant and the appellee entered into a written contract, the parts of which pertinent to the present controversy read:

"This agreement, made and entered into this 25th day of November, 1921, by and between G. R. Martin, Drift, Floyd County, Kentucky, party of the first part, and Ogle Coal Company, a corporation organized and existing under the laws of the State of Indiana, party of the second part.

"Witnesseth: That whereas, on the 25th day of November, 1921, J. N. Meek, principal of the J. N. Meek Coal Company, Paintsville, Johnson County, Kentucky, made, executed and delivered to the party of the second part, a contract for the output of the coal of his mines, a copy of contract hereto attached, and,

"Whereas, the party of the first part has rendered service to the party of the second part herein, and has been instrumental in the securing of said coal.

"Now, in consideration of the contract and further consideration of the services rendered by the said party of the first part in procuring the execution and delivery of said contract, it is agreed by and between the parties hereto, as follows, to-wit:

"First—The party of the second part agrees to pay to the said party of the first part for his services, on or before the 15th day of each and every month during the life of this contract or any renewals thereof, or, as long as the said party of the second part may handle any of the said coal, the minimum sum of five (5) cents per ton on all coal sold up to $3.50 per ton and ten (10) cents per ton for all coal sold over and above $3.50 per ton, and also a like

amount on any and all other coal which may be secured by said party of the first part.''

Through the efforts of the appellee, the Turner-Elkhorn Coal Company, by a written contract of date March 10, 1922, constituted the appellant its exclusive agent for the sale of the output of its mine for the period beginning with the date of the contract and ending with the 31st day of March, 1923. It stands admitted that the Turner-Elkhorn Coal Company renewed this contract for the period April 1, 1923, to March 31, 1924, and again for the period April 1, 1924, to March 31, 1925, but that the appellee had nothing to do with these renewals, and indeed the first of them was made in spite of his efforts to prevent such action on the part of the Turner-Elkhorn Coal Company. The appellant paid the appellee his commissions under his employment contract of November 25, 1921, for the coal of the Turner-Elkhorn Coal Company which it sold for the period ending March 31, 1923, but declined to pay him for the periods ending March 31, 1924, and March 31, 1925. Thereupon appellee brought this suit for $2,482.50, which it is conceded appellant owes him if appellee is entitled to any commissions under his employment contract for the two periods for which it declined to pay him anything. On the trial, the appellee recovered a verdict for the amount for which he sued, and from the judgment entered on that verdict this appeal is prosecuted.

The contract of employment of date November 25, 1921, was negotiated between the appellee and Mr. H. K. Howard, the then sales manager of the appellant. The appellee says that no one was present during the negotiations but Mr. Howard and himself. Mr. Howard was not produced as a witness in this case, and the appellant went to trial without his testimony and without any complaint about his absence. Mr. E. S. Ogle, vice president of the appellant, testified, however, that he was present during the negotiations between Mr. Howard and the appellee. Over the appellant's objections, the appellee was permitted to testify that the parties by the employment contract intended that the appellee should receive the commissions provided for by that contract on all coal sold by the appellant for coal companies, no matter when sold, if the appellee initially secured the agency for the appellant and even though appellee played no part whatever in any subsequent renewal of such agencies.

Although Ogle testified that he was present during the negotiations between Howard and the appellee, he was not questioned as to what the parties meant by their contract, nor did he deny what the appellee testified in this regard. As the sole issue under the pleadings was whether the appellee was entitled to the commissions he claimed under the terms of this contract of employment, appellant insists that it was error for the court to admit this testimony of the appellee and error for the court to allow the jury by its instructions, as it did, to consider such testimony in arriving at their verdict. The appellant insists that it was entitled to a peremptory instruction. On the other hand, appellee insists that a proper construction of his employment contract entitled him to a peremptory instruction, but that if he is in error about this, he was still entitled to such an instruction because the evidence complained of was properly admitted and was uncontradicted.

Both parties to this suit concede, as they must, the general rule thus stated in Hudson v. McGuire, 188 Ky. 712, 223 S. W. 1101, 1102, 17 A. L. R. 148: ''It is elementary law that the intention of the parties in the execution of deeds and other like instruments controls the construction, and that when the instrument is fair on its face and free from ambiguity their intention must be gathered from an inspection of the instrument itself without the aid of extrinsic evidence, but if the instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in the construction of the instrument, although no effort is made to reform it on the ground of fraud or mistake.''

So the first question which confronts us is whether the contract of employment is so ambiguous as to leave the mind in doubt as to what the parties intended. On first blush, the contract seems to support the appellee in his contention as to the proper construction which should be put upon it. If so, then he was entitled to a peremptory instruction, and appellant has no just cause to complain of the verdict and judgment. But further study of the contract does not make appellee's contention so manifest. Did the provision in the employment contract as to the Meek coal reading, ''as long as the said party of the second part may handle any of said coal,'' refer to the coal, the contract for which appellee had secured, or any coal of the Meek Company? Did the provision in the

employment contract reading, "also a like amount on any and all other coal which may be secured by said party of the first part," mean by the phrase "a like amount" the rate of commission to be paid for the Meek coal, i. e. five cents, etc., per ton, or the amount calculated as in the Meek case by the rate times the tonnage, the tonnage depending on whether the Meek tonnage was to be confined to the contract secured by the appellee or was to cover any Meek tonnage thereafter handled by the appellant? This statement of the difficulties in the proper construction to be put on this employment contract and the impossibility of surely arriving at the proper intention of its terms fully justified the lower court in admitting the evidence he did, and as it stood uncontradicted and the proper construction to be put on the contract being the only issue in the case, the lower court would have been authorized to have instructed peremptorily to find for the appellee. The appellant may not complain then that the case was submitted to the jury.

Finding no error prejudicial to the substantial rights of the appellant, the judgment of the lower court is affirmed.