Pauline M. LONG, et al., Plaintiffs,

v.

MADISON COAL CORPORATION, Defendant.

No. 584.

United States District Court
W. D. Kentucky, Owensboro Division.

Oct. 19, 1954.

Robert T. Sweeny, Owensboro, Ky., for plaintiffs.

Thomas E. Sandidge, Owensboro, Ky., for defendant.

SWINFORD, District Judge:

This case is before the Court on the plaintiffs' motion for summary judgment. The defendant contends that the motion should be overruled on the ground that there is an issue of fact to be determined. My examination of the record and exhibits fails to disclose that there is any genuine issue of fact. The ultimate determination of the case rests upon the construction of language used in a deed of conveyance to a large tract of land in this district.

The Ohio Valley Coal & Mining Company conveyed a tract of 1683 acres of land to A. R. Long, the predecessor in title of the plaintiffs. This transaction took place in Pittsburgh, Pennsylvania, on April 1, 1914, the date appearing on the deed. On the same day, but prior to the execution of the deed, a meeting of the directors of the Ohio Valley Coal & Mining Company was held at its office. A resolution authorizing certain of its officers to execute the deed was adopted. The resolution is in words and figures as follows:

"Resolution
For
Ohio Valley Coal and Mining Company
"Pittsburgh, Pennsylvania
"April 1st, 1914
"Resolution:

"At a meeting of the Directors of the Ohio Valley Coal and Mining Company held this day at its office, number 1141 Oliver Building, Pittsburgh, Pennsylvania, the following resolution was adopted in regard to the sale of certain real estate at DeKoven, Union County, Kentucky;

"Whereas A. R. Long of DeKoven, Kentucky, proposes to buy from the Ohio Valley Coal and Mining Company certain real estate of farming lands lying in Union County, Kentucky, at the price of Twenty-Five Thousand ($25,000.00) Dollars, one-fourth (1/4) of which is to be paid in cash and the balance in nine (9) equal annual installments, reserving the coal and mining rights lying under said grant with certain other exceptions and reservations, resolved that said proposition be accepted and the *president* and *secretary* of this company are hereby authorized and directed to acknowledge and deliver a deed for said property to the said A. R. Long as the act and deed of said corporation by them as *president* and *secretary* respectively.

"I hereby certify the foregoing to be a true and correct copy of a resolution adopted by the Board of Directors of the Ohio Valley Coal & Mining Company at at a meeting duly convened and held on the first day of April, A.D. 1914.
"EAK J. W. Barber, Secretary
"(Seal)"

Pursuant to this resolution a deed incorporating the resolution was executed by the officials.

A. R. Long sold and conveyed the greater portion of this tract of land. He retained 348.56 acres, the tract involved in this litigation.

The plaintiffs contend that all minerals other than coal passed to the grantee. The defendant claims that no minerals passed to the grantee and relies upon the language of the resolution as an absolute defense to the relief asked in the prayer of the plaintiffs' complaint. It is pointed out by the defendant that it was the intention of the parties to convey nothing more than "farm lands" and that by this language, "reserving the coal and mining rights lying under said grant", no minerals passed with the deed to A. R. Long.

The courts of Kentucky, both state and federal, have frequently been called upon to construe the language of deeds, contracts and leases conveying or reserving minerals. The exact term, "coal and mining rights", has been defined by the United States Court of Appeals for the Sixth Circuit in a case from this court, Delta Drilling Company v. Arnett, 186 F.2d 481, 484. In the opinion in that case the court said:

"The mortgage reservation does not in terms mention oil and gas. It neither conveys these minerals to the

mortgagee nor reserves them expressly in haec verba to the mortgagor. If the reservation covers oil and gas it is due to the addition of the phrase 'mining rights' after the term 'coal'. As pointed out by the defendants, the privilege of access, of digging, etc., which follows in the reservation, clearly relates only to coal, and the term 'or minerals' which are authorized to be carried through the premises refers to minerals underlying adjacent properties.

"However, it is now clearly settled in Kentucky that the term 'mining rights' means minerals, and includes oil and gas. Rowe v. Chesapeake Mineral Co., 6 Cir., 156 F.2d 752; Maynard v. McHenry, 271 Ky. 642, 113 S.W.2d 13; Kentucky-West Virginia Gas Co. v. Preece, 260 Ky. 601, 86 S.W.2d 163; Federal Gas, Oil & Coal Co. v. Moore, 290 Ky. 284, 161 S.W.2d 46; Hurley v. West Kentucky Coal Co., 294 Ky. 96, 171 S.W.2d 15; Hudson & Collins v. McGuire, 188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 148; Slone v. Kentucky-West Virginia Gas Co., 289 Ky. 623, 159 S.W.2d 993. Hence the mortgagor reserved title to the oil and gas."

The same court in the case of Rowe v. Chesapeake Mineral Company, 156 F.2d 752, 754, in passing upon a somewhat similar question used the following language:

"It is the established rule under both state and federal law that the term 'mineral' includes gas and oil, as well as solid minerals. As stated by the Supreme Court of the United States in Northern Pacific R. Co. v. Soderberg, 188 U.S. 526, 23 S.Ct. 365, 368, 47 L.Ed. 575, the words 'valuable mineral deposits' include 'all lands chiefly valuable for other than agricultural purposes, and particularly as including nonmetallic substances, among which are held to be \* \* \* petroleum \* \*.' To the same effect is Burke v. Southern Pacific R. Co., 234 U.S. 669, 34 S.

Ct. 907, 58 L.Ed. 1527, which squarely holds that oil is a mineral. The Minerals Year Book for 1936, page 42, published by the United States Department of the Interior, Bureau of Mines, includes oil and gas among the minerals."

It would appear that the interpretation of Kentucky authorities, from which a definition of the term "coal and mining rights" was determined, would be conclusive authority for the position of the defendant. For that reason, to discuss other authorities would be of no value.

■■ I do not believe, however, that the determination of this case must rest solely upon the definition of the language contained in the resolution. It is the law in Kentucky that if the intention of the parties can be ascertained it must control. The intention does not necessarily rest upon any word or phrase, but is gathered from the entire instrument with proper effect to be given to all of the clauses wherever they appear. Combs v. Combs, 292 Ky. 445, 166 S.W.2d 969.

■ In McKinney's Heirs v. Central Ky. Natural Gas Co., 134 Ky. 239, 120 S. W. 314, 315, 20 Ann.Cas. 934, the following pertinent language, which seems to me especially applicable, was used:

" 'A rule of construction in such cases, which seems correct, is found in the following from the Law of Mines and Mining in the United States by Barringer & Adams, p. 131: "In determining what is included in a lease, the familiar rules of construction are applied. The grant is construed most strongly against the grantor. The whole contract must be considered in arriving at the meaning of any of its parts. Terms are to be understood in their plain, ordinary, and popular sense, unless they have acquired a particular technical sense by the known usage of the trade. They are to be construed with reference to their commercial and their scientific import.

This rule is of especial importance when the question arises whether **a** specific mineral is included in a general designation." The words "other minerals," or "other valuable minerals," taken in their broadest sense, would include petroleum oil; but the question here is: Did the parties intend to include such oil in the mining right? Taking all the terms of the conveyance in the light of the surrounding circumstances, and in view of the above rule of construction, and upon authority of the case of Dunham & Short v. Kirkpatrick, 101 Pa. 36, 47 Am.Rep. 696, we conclude that the title to the oil did not pass under said conveyance, but remained in the owner of the soil, and upon his death passed to his heirs. There is nothing to show that it was the intention of the parties that oil should be included in the word "minerals," and the easements granted in connection with the mining right are not applicable to producing oil and show that oil was not intended to be included in the conveyance. If it had been, apt words would have been used to express such intention.' "

 It should be borne in mind that even with the definition the modern tendency is to disregard technicalities and to treat any uncertainty in the language of the conveyance as an ambiguity which can be clarified by a resort to the intention of the parties. This intention may be unerringly explained and gathered, not only from the instrument itself, but from the circumstances attending and leading up to its execution. The court should also take into account the situation of the parties at the time of the transaction. Hudson & Collins v. McGuire, 188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 148.

In Delta Drilling Company v. Arnett, supra, a reading of the opinion indicates clearly that the interpretation of this language was reached by the court by taking in all of the surrounding facts and circumstances prior to the acquisition of the title papers under which the appellants held and developed the lease. It was pointed out that a foreclosure in a state court on the mortgage in which the language was used and the judgment of sale with its subsequent commissioner's deed and deeds transferring the property, all of which took place many years prior to the acquisition of the appellants' title papers, were given great emphasis by the court in its construction of the language.

In the Delta Drilling Company case, the language used in the mortgage on which the appellee relied was: " ' * * * the coal and mining rights under this land is not mortgaged or affected hereby but are reserved * * * ' ". The judgment of foreclosure nor the commissioner's deed did not use this language, but recited that " 'the coal and other mining rights in and under said 47 acres have heretofore been conveyed * * * ' ". A subsequent deed transferring the same property declared: " 'Less however the coal and mineral rights underlying this property is not herein conveyed, having been retained in a former deed * * * ' ". It was emphasized in the opinion that the appellant, by the record containing such reference to mining and mineral rights, was put on notice at the time of purchase.

The lower court in its opinion in Arnett v. Sinclair Prairie Oil Company, D.C., 88 F.Supp. 343, 347, placed great stress upon the fact that the judgment of foreclosure had used the words "other mining rights" and expressed the opinion that this put the purchaser upon notice that something other than coal was reserved. It is seen that great consideration was given to related circumstances in arriving at the definition expressed by Judge Allen in Delta Drilling Company v. Arnett, supra, and that that case cannot be accepted as a final determination of the construction of all written instruments using the term "coal and mining rights".

██ The deed of April 1, 1914, does not use the term "coal and mining rights" except by reference in its incorporation of the resolution. The reservation ex-

pressed in the deed proper is in words and figures as follows:

"Excepting and reserving from the operation of this conveyance as follows; viz.;

"First: All the coal in and underlying said above described tract of land together with the free and uninterrupted right of way into, upon and under said land at such points and in such manner as may be proper and necessary for the purposes of digging, mining, coking and draining and ventilating and carrying away said coal, now owned or which may hereafter be acquired by said grantor, its successor or successors and assigns, with waiver of all surface damage or damages of any sort, arising therefrom."

It is obvious to me that the land was conveyed to A. R. Long primarily for farming purposes. Back in 1914 the development of oil and gas was not of any great consequence and it is very likely that neither of the parties gave any thought to any mineral other than coal. Not only the language I have quoted from the deed but the whole deed indicates clearly that coal was the only mineral that was intended to be reserved. Mr. Long wanted the property for farming or for speculation for resale for farming and the Ohio Valley Coal and Mining Company wanted to reserve the coal which was the only business in which it was engaged. The word "minerals" is not used anywhere in the instrument. No indication of development or transportation other than for coal extraction can be found.

I am aware of the fact that the Kentucky Court of Appeals in Maynard v. McHenry, 271 Ky. 642, 113 S.W.2d 13, has declared that the mere fact that the particular mineral had not been discovered in the vicinity of the land conveyed does not alter the rule of the construction of terms. See also Kentucky Diamond Mining & Developing Co. v. Kentucky Transvaal Diamond Co., 141 Ky. 97, 132 S.W. 397, Ann.Cas. 1912C, 417.

In the light of all the circumstances surrounding this transaction and with nothing in the record to indicate that the parties had anything other than coal in mind, I conclude that the reservation in the deed did not include minerals other than coal and that all other minerals passed with the deed to the grantee.

The motion for summary judgment should be sustained and the plaintiffs have judgment for the relief asked in the prayer of the complaint. The attorney for the plaintiffs will prepare and submit a judgment and order in conformity with this memorandum.