**KENTUCKY–WEST VIRGINIA GAS COMPANY, Appellant,**

v.

**Josephine H. BROWNING et al., Appellees.**

Court of Appeals of Kentucky.

March 7, 1975.

Rehearing Denied May 9, 1975.

William J. Baird, Baird & Hays, Pikeville, for appellant.

Joe Hobson, Prestonsburg, Harkins, Harkins & Wilson, P. S. C., Lexington, for appellees.

VANCE, Commissioner.

This is an appeal from a judgment which declared that appellees (hereinafter referred to as the Harkins heirs) are the owners of a one-half interest in the oil and gas underlying a tract of land in Knott County.

Appellant claims to own all of the oil and gas by virtue of two deeds executed by Walter Harkins and wife Josie Harkins to Northern Coal and Coke Company, appellant's predecessor in line of title, in 1905 and 1906.

In 1905, Walter and Josie Harkins executed a deed to Northern Coal and Coke Company (hereinafter referred to as the 1905 deed) which conveyed one-half of the oil, gas, salts and mineral waters and all the coal, stone, fire clay, pottery clay, metal, mineral, mineral substances and ores and all the subterranean products underlying the land.

In 1906, Walter and Josie Harkins executed a second deed (hereinafter referred to as the 1906 deed) which conveyed to Northern Coal and Coke Company all of the coal, mineral, rights and privileges, in, upon and appurtenant to the tract of land.

All of the mineral rights conveyed by Walter and Josie Harkins to Northern Coal and Coke Company by the two deeds became vested in the appellant on December 1, 1927.

In the meantime the Harkins heirs, relying upon the retention of one-half of the oil and gas underlying the property contained in the 1905 deed, executed a lease to Ivyton Oil and Gas Company, leasing to it the one-half of the oil and gas so retained. On December 1, 1927, Ivyton Oil and Gas Company assigned numerous leases, including the one from the Harkins heirs to appellant.

Thus on December 1, 1927, appellant became vested with all of the interest in the oil and gas underlying this tract of property which was conveyed from Walter and Josie Harkins to Northern Coal and Coke Company by the deeds executed in 1905 and 1906, and on the same day it acquired by assignment of the lease executed by the Harkins heirs to Ivyton Oil and Gas Company the one-half interest in the oil and gas underlying this tract of land which was claimed by the Harkins heirs.

From December 1, 1927, until the commencement of this litigation in 1949, the appellant paid delay rentals to the Harkins heirs as provided in the terms of the lease.

In 1949, after successful exploratory drilling upon the property in question, the appellant instituted this action to quiet title.

By answer the Harkins heirs asserted their claim to one-half of the oil and gas underlying the property and in addition set forth an affirmative defense of estoppel.

■ The deed executed by Walter Harkins and wife Josie Harkins to Northern Coal and Coke Company in 1906 conveyed "all the coal, mineral, rights and privileges" in the property. It is well-settled in this state that the words "coal and minerals" include oil and gas. Bland v. Kentucky Coal Corp., 306 Ky. 1, 206 S.W.2d 62 (1947); Berry v. Hiawatha Oil & Gas Co., 303 Ky. 629, 198 S.W.2d 497 (1946).

■ The intention of the parties to a conveyance must be determined from the words used in the instrument. Parol evidence cannot be considered to determine the intention of the parties unless the words used in the instrument are ambiguous. Gibson v. Sellars, Ky., 252 S.W.2d 911 (1952).

■ The Harkins heirs contend that the determination of whether words used in a conveyance are ambiguous must be made upon the basis of the common understanding of those words at the time they were used (in this case 1906). They argue that while it may now be well-settled that a conveyance of coal and mineral includes the oil and gas such was not the case in 1906 and that they should be permitted to produce extrinsic evidence to show the common understanding of the words used at the time of use. They further argue that they should be permitted to introduce extrinsic evidence as to the real intention of the parties.

An identical argument was advanced, and decided adversely to the appellees, in Gibson v. Sellars, supra, wherein we said:

"Appellee also insists that in construing the exception we should take into consideration the judicial interpretation applied to the term 'mineral rights' in ef-

**518**

fect in 1908 when the deed was executed. It is pointed out that the first Kentucky case in which the term was given the effect of including oil and gas was Scott v. Laws, supra, decided in 1919. It is also pointed out that the Pennsylvania rule in force in 1908, as evidenced by *Dunham v. Kirkpatrick*, 101 Pa. 36, 47 Am.Rep. 696, did not include these substances within that term.

"A sufficient answer to that contention is the fact that in the cases in which this court determined that oil and gas were included in the term 'mineral rights', there were involved, in most instances, deeds executed prior to 1908. It, therefore, cannot be said that the term had one meaning prior to 1919 and another subsequent to that time.

"We also observe that notwithstanding the Pennsylvania rule in effect in 1908, the rule established by the U.S. Supreme Court and in all states in which the question had arisen prior to 1908, except Pennsylvania, was that a conveyance or exception of minerals in a deed, lease, or license included all mineral substances which could be taken from the land. See Hudson v. McGuire, 188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 156; 86 A.L.R. 983."

■ We think *Gibson v. Sellars*, supra, is dispositive of this issue and appellant is the owner of all the oil and gas underlying the subject property by virtue of its chain of title back to the 1906 conveyance from Walter Harkins and Josie Harkins to Northern Coal and Coke Company.

The Harkins heirs next contend that appellant as a tenant under the lease from the Harkins heirs is estopped to contest their title.

■ Actual possession is of immense value in real property actions, and when a landlord surrenders his possession to a tenant he places the tenant in an advantageous position. In subsequent litigation it would be inequitable to allow the tenant to deny the landlord's title without first restoring the landlord to possession. This is the basis of the general rule that during the relationship of landlord and tenant the tenant is estopped to deny the landlord's title. 49 Am.Jur., 2d, Landlord & Tenant, Section 109.

■ The factual situation presented here does not come within the purview of the doctrine of estoppel. The Harkins heirs did not surrender possession of the mineral rights to the appellant. The Harkins heirs never had actual possession of the mineral rights. The actual possession was held by the owner of the surface for the benefit of the owner of the mineral rights, whoever that might be. KRS 381.-430. McPherson v. Thompson, 203 Ky. 35, 261 S.W. 853 (1924).

When they executed the lease the Harkins heirs did not surrender actual possession but only such right of possession as they then had, if any. They have not surrendered any right by the execution of the lease which places them in a disadvantageous position as far as the outcome of this litigation is concerned.

Without question the appellant owned one-half of the oil and gas rights at the time it took the assignment of the Harkins lease. At best the claims of the Harkins heirs is one of joint ownership and their claim has long been in dispute.

In a leasing arrangement with appellant's predecessor, the Harkins heirs initiated an action to quiet title on the property in question; however the action died for lack of prosecution. Moreover the last extension of appellant's lease, dated June 29, 1946, contained a prophylactic provision limiting the Harkins heirs liability, should they be found to be without title, to a refund of rents and/or royalties paid after the date of the extension.

Under the circumstances of this case we find no basis for the application of the rule which estops a tenant to deny the title of his landlord.

The Harkins heirs also claim an estoppel or laches based upon the fact that the passage of years has made it more difficult for them to secure evidence as to the intention of the parties when the 1906 deed was executed. This contention fails because of our holding that extrinsic evidence as to the intention of the parties to that instrument is inadmissible.

The judgment is reversed with directions that a new judgment be entered in conformity with this opinion.

All concur.