THE DEER LAKE COMPANY (A CORPORATION) v. THE MICHIGAN LAND & IRON COMPANY (LIMITED).

[See 83 Mich. 11.]

*Deed—Reservation of minerals—Consolidation of railroad companies—Estoppel—Adverse possession.*

1. Where, prior to the consolidation of two railroad companies, one of them conveys certain lands by warranty deed with mineral reservations, after which the lands are certified to the State of Michigan in aid of the construction of the road of the other company, and the two companies are consolidated under a new name pursuant to the statute, and the State patents the lands to the new company, which conveys the mineral reservations, the patentee and its grantees are bound by the deed given by the first company.

2. Where for 18 years the grantees in a warranty deed duly recorded, and those claiming under them, pay the taxes from year to year, and publicly, and without their rights being questioned, cut valuable timber at different times as they see fit, and erect shanties for the use of their workmen, cut hard wood and burn charcoal on the land for several years, clear and cultivate a portion of it, and at one time raise crops

thereon, pasture it, run lines around and make roads over the land, and look it over from year to year to prevent trespasses, such acts of ownership are sufficient to establish a title by limitation.

3. A reservation in a deed of mineral lands, of "all mines and ores of metals that are now or may be hereafter found on the said lands," only covers mines and ores of metals and minerals in common use, and commonly known as such, and will not include quarries or deposits of marble, serpentine, or other building material not then known to exist in the country, although belonging to the mineral kingdom.

Appeal from Marquette. (Stone, J.) Argued November 18, 1891. Decided December 21, 1891.

Bill to quiet title to the marble and serpentine contained in certain lands. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*E. E. Osborn,* for complainant.

*Ball & Hanscom* (*B. J. Stevens,* of counsel), for defendant.

*W. P. Healy,* by consent of the Court, filed a brief as an intervener.

McGRATH, J. This case was before this Court in October, 1890. 83 Mich. 11. After the determination of that suit, complainant, on November 14, 1890, filed a second bill. The testimony now shows that, immediately after the commencement of the former suit, the Michigan Marble Company removed from the premises in question all its machinery and tools, and abandoned the work, leaving complainant in possession, and this was the situation when the present bill was filed.

The bill is filed to quiet complainant's title to the marble and serpentine contained in the W. ½ of the S. W. ¼ of section 29, township 48 N., of range 27 W., in Marquette county. In 1867 the Marquette & Ontonagon

Railroad Company conveyed the land in question, with others, by a warranty deed (containing a mineral reservation) to John B. Ward and Gardner Green. The complainant claims title from that source through successive conveyances, and by peaceable adverse possession under color and claim of title for the statutory period.

On September 2, 1872, the Marquette & Ontonagon Railroad Company was consolidated with the Houghton & Ontonagon Railroad Company, forming the Marquette, Houghton & Ontonagon Railroad Company. The land in question, with others, was certified in 1871 to the State of Michigan, for the construction of the Houghton & Ontonagon Railroad Company. On June 13, 1873, it was patented by the State of Michigan to the consolidated company, the Marquette, Houghton & Ontonagon Railroad Company. Subsequently the Marquette, Houghton & Ontonagon Railroad Company, by two conveyances, dated, respectively, August 30, 1881, and April 12, 1884, conveyed to the defendant, and its successors and assigns, all mineral rights in these lands and others, which had been previously reserved, reciting, among other things, the right to quarry and take any valuable stone or marble found thereon. Shortly before the commencement of this suit some explorers found deposits of marble and serpentine upon the land, and were proceeding to develop the same under an option for a lease given them by defendant. Those proceedings were the occasion of filing the bill herein. The lands having been certified to the Houghton & Ontonagon Railroad. Company, and patented to the Marquette, Houghton & Ontonagon Railroad Company, the defendant denies that complainant received any title through the deed from the Marquette & Ontonagon Railroad Company.

Two important questions are presented by the pleadings and proofs:

1. Has the complainant shown title, either by peaceable adverse possession, or by operation of the warranty deed given it by the Marquette & Ontonagon Railroad Company, inuring to its benefit, so as to bind the Marquette, Houghton & Ontonagon Railroad Company?

2. If so, does the mineral reservation contained in the deed given by the Marquette & Ontonagon Railroad Company in 1867 include marble and serpentine?

Upon the question of possession, I agree with the learned circuit judge, where he says:

"I think that the testimony fairly shows that during the past eighteen years the complainant and its grantors have openly and peaceably exercised such acts of possession and ownership from time to time as presumptively were and naturally must have been known to the agents of the defendant and its grantors. They have paid the taxes from year to year, and publicly, and without their rights being questioned, cut valuable timber from the land at different times as they saw fit, have erected shanties thereon for their workmen, cut off hard wood and burned charcoal upon the land for several years, cleared and cultivated a portion of it, and at one time raised some crops. They have pastured it, run lines around it, and made roads over it, and looked it over from year to year to prevent trespass. They have occupied and used it to the exclusion of all others, doing all such things as were consistent with the nature of the land, publicly and without interference, under a color of title based upon a warranty deed, properly recorded, from one of the very companies which by consolidation formed the defendant's grantor. This I infer is sufficient to establish title by limitation.

"If the position of the defendants as to the warranty deed given by the Marquette & Ontonagon Railroad Company is correct, and they are not, through the Marquette, Houghton & Ontonagon Railroad Company, affected or bound by it, but derive what title they claim from an entirely different source, it seems to follow that they can claim nothing by virtue of the mineral reservations in said deed, and the view taken upon the statute of limitations disposes of the entire case in favor of the complainant.

"It seems to me, however, that by the consolidation of those companies the Marquette, Houghton & Ontonagon

Railroad Company did become interested in and bound by the terms of said warranty deed to the same extent that the Marquette & Ontonagon Railroad Company was before it disappeared in the consolidation. The statute upon that subject provides that ' all the debts, liabilities, and duties of either company shall thenceforth attach to such new corporation, and be enforced against the same, to the same extent as if such debts, liabilities, and duties had been originally incurred by it.' Had the Marquette, Houghton, & Ontonagon Railroad Company originally given the warranty deed in 1867, and then incurred the liabilities thereunder, there would certainly be no question now raised by defendant as to complainant's title." If the Marquette & Ontonagon Railroad Company had given a contract for a deed instead of a warranty deed, there could be no question but that the Marquette, Houghton & Ontonagon Railroad Company could have been compelled to specifically perform. "No question of an innocent purchaser is involved here, and the defendant is in exactly the same position as the Marquette, Houghton & Ontonagon Railroad Company would be if a defendant in this suit."

The deed from the Marquette, Houghton & Ontonagon Railroad Company to defendant, dated April 12, 1884, recites that:

"*Whereas*, the Marquette, Houghton and Ontonagon Railroad Company, a corporation existing under the laws of the State of Michigan, has heretofore conveyed certain lands to various persons or corporations, and has in said conveyances saved and reserved to it, the said company, and to. its successors and assigns forever, the ores, minerals, slate, sandstone, limestone, granite, marble, and other stone or rock valuable for building or other purposes, on or beneath the surface of said lands, or any part or portion thereof, *or has made, in similar conveyances, similar reservation of mineral rights*, the same being made for the purpose of reserving to said company, its successors and assigns, the right of property in the mineral products beneath the surface of the said lands, together with the right of entry on said lands to explore therefor, and to mine, smelt, and refine such ores and minerals, and to quarry and dress such stone or rock, and to remove the same, and for that purpose to erect

or construct and maintain all such buildings, machinery, roads, or railroads, sink such shafts, remove such soil, occupy as much of said land, and use and divert such streams or ponds of water thereon, as might be necessary or convenient for the successful prosecution of said business, *or however else said reservations or mineral rights may be expressed in said conveyances* from said company to said persons or corporations, reference to which, for greater certainty, is hereby made; and—

"*Whereas,* the said Marquette, Houghton & Ontonagon Railroad Company has in a certain deed of release bearing date August 30, A. D. 1881, released the said reservations and rights retained by and existing in said company as aforesaid to the Michigan Land & Iron Company, Limited, a partnership association existing by and under the laws of the State of Michigan, and has executed to said copartnership association a deed therefor, designating the same by general terms; and—

"*Whereas,* the said Michigan Land & Iron Company, Limited, has deemed it desirable that the said reservations and rights should be conveyed by a more specific and definite description thereof, and has requested said Marquette, Houghton & Ontonagon Railroad Company to execute a release thereof:

"*Now, therefore,* * * * the said Marquette, Houghton & Ontonagon Railroad Company, * * * for the purpose of more specifically defining the rights and conveyances already made, but not for the purpose of increasing or enlarging in any way said conveyances, *doth hereby remise, release, and forever quitclaim, unto the said Michigan Land & Iron Company, Limited, all its right, title, and interest, as now existing, in all the lands conveyed by it by conveyances executed prior to said 30th day of August, A. D. 1881, containing the savings and reservations of mineral rights aforesaid,* and all its right to the said ores, minerals, slate, sandstone, limestone, granite, marble, and other stone or rock, and its right to enter upon said lands, and to use the same in manner provided in such reservation and reservations aforesaid, and such right, title, and interest as it possesses in the lands covered by said several conveyances, and to the ores, minerals, and other substances, and all rights of entry and use of and over said lands."

Following this is the statement that "*the conveyance*

*hereby made is executed to be subject to the various condi-
tions, stipulations, agreements, and obligations contained or
to be contained in said several conveyances;"* after which
comes a general description of the lands intended to be
embraced, among which are the lands in controversy.
This deed expressly recognizes the conveyance made to
complainant's grantors, for it conveys nothing but
reserved rights in any lands, and it recognizes this land
as though "conveyed by it."

As to the second question, the language of the reser-
vation is as follows:

"Saving and reserving to the grantor herein, its suc-
cessors and assigns, forever, all mines and ores of metals
that are now or may be hereafter found on the said
lands, with the right to enter upon the same, and use
and occupy all lands necessary for mining purposes, to
lay down railroad tracks, and build roads and railroads,
over and across the same, and to mine and carry away
the mineral thereon."

Upon this point I adopt the language of the circuit
judge:

"It seems proper, in a case like the present, to give
the language its natural and common meaning, such as
the contracting parties must have contemplated and
understood under the circumstances surrounding the
transaction. At that time, no marble or serpentine was
known to exist in the country. The only valuable min-
eral found in that portion of the country was iron. In
a subsequent portion of the same deed are elaborate pro-
visions as to delivery of iron ore. Manifestly the prin-
cipal consideration in the minds of the parties was iron
ore. At most, it seems to me they could have only
meant, and a natural construction would only cover,
mines and ores of metals and minerals in common use,
and commonly known as such, and would not include
quarries or deposits of marble, serpentine, or other build-
ing material, although they do belong to the mineral
kingdom. The construction contended for would reserve
everything but the timber, and render the deed nothing
more than a license to enter and cut the same, with, per-

haps, a lease of the land during the pleasure of the grantor. Such, clearly, was not the intention of the parties."

The decree of the court below is affirmed, with costs to complainant.

The other Justices concurred.