CASE 34.—THREE SEPARATE ACTIONS BY THE CENTRAL
    KENTUCKY NATURAL GAS CO. AND OTHERS
    AGAINST JOHN McKINNEY AND OTHERS.—June
    10, 1909.

# McKinney's Heirs v. Cen. Ky. Nat. Gas. Co.

Appeal from Menifee Circuit Court.

A. W. Young, Circuit Judge.

From a judgment for plaintiffs in each case de-
fendants therein appeal.—Affirmed.

1.  Mines and Minerals—Grants of Minerals—Conservation.—In
    an action to quiet title to lands, in which plaintiff's grantor
    had previously granted "all minerals" therein, the deeds grant-
    ing the mineral rights, construed in connection with other
    evidence, showing the intention of the parties thereto, held
    to show that they did not intend to grant the right to the
    natural gas under the land.
2.  Mines and Minerals—Conveyance—Minerals Conveyed.—Even
    though deeds purporting to convey "all minerals" underlying
    the land, if they, in connection with the other evidence, show-
    ed that the parties did not contemplate a conveyance of the
    natural gas thereunder, the right to the gas did not pass.

BECKNER & BECKNER for appellants.

### QUESTIONS DISCUSSED.

1.  Parol evidence not admissable when the written instrument
to be construed is plain and unambiguous in its terms.
2.  Natural gas is a mineral.
3.  When a deed conveys the mineral in a tract of land and
grants the right to explore and prospect for minerals, if natural
gas be found, it passes.

### AUTHORITIES CITED.

9 Cyc. 773; Thompson and Noble, 3 Pittsburg 201; 25 L. R. A.
224; 9 Cyc. 590; Cleveland's Mineralogy, 1; Donahue on Petroleum

and Gas, 9; Murray v. Allard, 39 L. R. A. 249; Thornton's Oil and Gas, p. 30, Sec. 8-9; Kincaid v. McGowan, 88 Ky. 91; Bakewell's, 7.

HAZELRIGG & HAZELRIGG for appellees.

Quite a little of the proof offered by the appellee goes to show that the grantees in the old deed had abandoned all rights or interest conveyed to them originally. The proof was offered with a full recognition of the rule of law which would allow a separation of the fees in the land, that is, separate ownership of the surface and that which lies beneath. This rule is announced in Kincaid v. McGowan, 88 Ky. 91.

### AUTHORITIES CITED.

Donohue on Petroleum and Gas, page 220; Deer Lake Co. v. Medrigan Land & Iron Co., 89 Mich. 180; Dinham v. Kirkpatrick, 47 Am. Rep. 696; Delton v. Holland, 57 Ohio 492; Murray v. Allard, 100 Tenn. 100; Armstrong v. Granite Co., 147 N. Y. 495.

OPINION OF THE COURT BY JUDGE NUNN —Affirming.

The above-styled actions were instituted by appellees against the three separate appellants for the purpose of removing a cloud from and quieting the title to the lands described in the three petitions. The actions were brought under the provisions of section 11, Ky. St. Appellants answered and controverted the allegations of the petitions. The testimony was heard, and the case considered by the court, and judgments were rendered in behalf of appellees in accordance with the prayers of their petitions. The questions to be considered on the three appeals are similar, and involved the construction of three conveyances. The first is a deed from James Ballard to Gibbs and Dollins, dated March 25, 1871, in the granting clause of which the following language is used, to wit: "Do grant, bargain, sell and convey unto the parties of the second part his whole entire right, title and interest in all minerals such as coal, iron, silver, gold, copper, lead, bismuth, antimony, zinc or any other

mineral of any marketable value contained within the following boundary of land lying and being in the county of Menifee.'' And continues by describing the land, and with the following language: ''With the right to explore, prospect, mine and dig upon any of said land for any of the above minerals or any other of any marketable value, together with the right of timber, stone or any other material necessary for improvements for mining, to sink shafts, open drifts or do anything else on said land, necessary to the development of said minerals.''   That part of the deed for construction in the second styled case from James Hodge and wife to Morrison & De Bard, dated January, 1877, is the language used in the granting clause, and is as follows: ''All the coal and mineral interests and privileges, together with the right of way to and from all the mines or openings, also the right to open mines for and develop the same with a sufficiency of timber for mining purposes and the construction of cabins for miners.'' And then continues with a description of the land.   In the habendum clause the following language appears, to-wit:   ''To have and to hold the said minerals of all kinds in or under the said described tract of land, the right of way to and from any mine that may be open or hereafter opened on the same and all timber necessary for mining the said minerals.'' That portion of the deed in the last-styled case necessary for construction is as follows: ''Party of the first part * * * hereby sells, grants, conveys to party of the second part * * * following property (describing it) of which E. C. Strong and F. M. Carter (parties of the second part) is hereby entitled to one-half of all the mineral or coal of the above-described boundary with all necessary timber and coal yards and rights of way,'' etc. This deed

is from Hulda Ann Coldiron to Strong & Carter, and is dated December, 1874.

The grantors in the above three conveyances or their grantees or descendants, after the date of the above conveyances, leased or sold to appellee Central Kentucky Natural Gas Company the exclusive right to the natural gas under said land, and it sank wells, found the gas, and is furnishing it to persons in several cities and towns in the state. Appellants have been setting up claim to this gas by reason of their conveyances from which the above questions are taken. Therefore the only question to be considered is whether the conveyances referred to include natural gas. It will be observed that gas is not specifically mentioned in either of the deeds; but in all of them the word "minerals" is used, which counsel for the parties concede, when given its broadest meaning, includes natural gas. But the question to be determined is: What was the intention of the parties to the deeds at the time they were made? Did the grantors understand at that time that oil and gas were minerals and would pass with the other minerals named in the conveyances; and did they intend to convey the gas? In other words, did the minds of the parties to the conveyances meet upon the questions? Did the one understand that he was conveying, and the other that he was purchasing the gas thereunder? If not, the gas did not pass with the conveyances. The solution of this question depends upon the language used in the conveyances and the facts and circumstances surrounding the parties at the time they made them.

We have not been cited to, nor have we been able to find, any decisions in Kentucky that throw any light upon the subject. We find in Donahue on Petroleum & Gas, p. 220, the following: "When a lease

granted to the lessee, and his heirs, and assigns for-ever, 'all the coal of every variety, all the iron ore, fire clay and other valuable minerals,' the deed did not convey any title to the petroleum or gas to the lessee. The words 'other minerals' or 'other valuable minerals' taken in the broadest sense would include petroleum oil, but, if the parties did not intend that the title to petroleum and gas should pass, the title remains in the owner of the fee * * *. The word 'min-eral' in its broadest sense would include all inorganic substances, such as clay, rock, sand, or any thing dug from mines, so that the reservation would be as broad as the grant, and would be void, so the court, in de-termining the meaning of the term 'all minerals,' con-cluded that the parties intended to include only such minerals as those which are classed to be minerals by the people in general, and this is more especially true when petroleum was not konwn to exist on the land at the time of the conveyance.''

The case of Detlor v. Holland, 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266, is exactly in point. The conveyance of the mine right in that case was as fol-lows: ''Do hereby grant, bargain, sell and convey to the said Michael L. Deaver, and his heirs and assigns forever, all the coal of every variety and all the iron ore, fire clay and other valuable minerals, in, on or under the following described premises, * * * together with the right in perpetuity to the said Michael L. Deaver, or his assigns, of mining and removing such coal, ore or other minerals, and the said Michael L. Deaver, or his assigns, shall also have the right to the use of so much of the surface of the land as may be necessary for pits, shafts, platforms, drains, railroads, switches, side tracks, etc., to facilitate the mining and removal of such coal,

ore, or other minerals and no more.'' The court, in construing that conveyance, said: ''Frances G. Deaver, the grantor in the mining right, resided in Wisconsin, and there is nothing to show that he had any knowledge of the existence of oil in or near these lands. Oil was then produced in small quantities within from 10 to 20 miles of the lands, but there is nothing to show that the parties to the conveyance had any knowledge thereof. Said mining right grants in perpetuity the right 'of mining and removing such coal, ore or other minerals, * * * with the right to the use of so much of the surface of the land as may be necessary for pits, shafts, platforms, drains, railroads, switches,side tracks, etc., to faciliate the mining and removal of such coal, ore or other minerals, and no more.' The incidents here granted are all such as are peculiarly applicable to the mining of minerals in place, and not to such as are in their nature of a migratory character, such as oil or gas. Nothing is said about derricks, pipe lines, tanks, the use of water for drilling, or the removal of machinery used in drilling or operating oil or gas wells. A rule of construction in such cases which seems correct is found in the following from the Law of Mines and Mining in the United States by Barringer & Adams, p. 131: 'In determining what is included in a lease, the familiar rules of construction are applied. The grant is construed most strongly against the grantor. The whole contract must be considered in arriving at the meaning of any of its parts. Terms are to be understood in their plain, ordinary, and popular sense, unless they have acquired a particular technical sense by the known usage of the trade. They are to be construed with reference to their commercial and their scientific import.

This rule is of especial importance when the question arises whether a specific mineral is included in a general designation.' The words 'other minerals,' or 'other valuable minerals,' taken in their broadest sense, would include pertoleum oil; but the question here is: Did the parties intend to include such oil in the mining right? Taking all the terms of the conveyance in the light of the surrounding circumstances, and in view of the above rule of construction, and upon authority of the case of Dunham & Short v. Kirkpatrick, 101 Pa. 36, 47 Am. Rep. 696, we conclude that the title to the oil did not pass under said conveyance, but remained in the owner of the soil, and upon his death passed to his heirs. There is nothing to show that it was the intention of the parties that oil should be included in the word 'minerals,' and the easements granted in connection with the mining right are not applicable to producing oil, and show that oil was not intended to be included in the conveyance. If it had been, apt words would have been used to express such intention."

The case of Dunham v. Kirkpatrick, 101 Pa. 36, 47 Am. Rep. 696, is also in point. In that case the reservation was of "all timber suitable for sawing and all minerals." The deed was made in 1870, and the opinion was rendered in 1882. The court held that the term "all minerals" did not include petroleum, because the mass of mankind did not so understand it; that nothing appeared in the record to show that the parties so understood it. However, the court in that case decided that petroleum was technically a mineral.

See, also, the case of Deer Lake Company v. Michigan Land and Iron Company, 89 Mich. 180, 50 N. W. 807. In the syllabus it is said: "A reservation in a

deed of 'all mines and ores of metals that are now or may be hereafter found on the said land' only covers mines and ores of metals and minerals in common use and commonly known as such, and will not include quarries or deposits of marble, serpentine, or other building material not then known to exist in the country, although belonging to the mineral kingdom.''

Appellees took the depositions of several old citizens in Pennsylvania, who testified: ''That they were well acquainted with the development of natural gas in this country; that it had no marketable value prior to the year 1882; that in that year it was piped to Bradford, Pa., in an experimental way.'' They also introduced the state and assistant state geologist of Kentucky, and they testified that not until the year 1885 or 1886 did natural gas have any marketable value in the state of Kentucky, and that it was at that time piped from Meade county to the city of Louisville.

Appellants introduced several witnesses who resided in Menifee county near the lands containing the gas in controversy. They testified that, about the time these conveyances were executed, there was great excitement in that locality over natural gas. The preponderance of the proof, however, is to the effect that the excitement was over the discovery of coal, and that the parties obtained these conveyances with the view of mining coal, which they did to some extent, but have long since ceased to use it for that or any other purpose. We may here remark that, if the excitement at that time was caused by the discovery of natural gas, it is strange that in drawing the conveyances they did not use words which would have, without doubt, included natural gas. In addition to

the oral testimony as to the history of natural gas at
the time the conveyances were made we will consider
the language of the conveyances to ascertain the in-
tention of the parties at the time they were executed.
If natural gas was in the minds of the parties at the
time of the execution of the conveyances, we would
expect to find expressions or terms which would refer
specifically to the rights and privileges necessary to
the development of it.    We erect derricks and
drill for gas and pipe it to market; but there is
not a grant of a right to the use of timber in
erecting derricks, or of an easement for pipe lines,
or with reference to the removal of machinery used in
drilling.    In fact, there is not a word in the convey-
ances giving the parties a right to exercise any of the
privileges necessary in drilling for natural gas.    The
word "minerals," as used in the conveyances, taken
in its broadest sense, would include natural gas; but
the question is:    Did the parties intend to include it
in the conveyances? There is nothing to show that it
was the intention of the parties that natural gas
should be included by the word "minerals," and the
easements granted in connection with the rights
therein conveyed are not applicable to the production
of natural gas, which shows that it was not intended
that gas was to be included in the conveyances.

Appellants claim that the case of Murray v. Allred,
100 Tenn. 100, 43 S. W. 355, 39 L. R. A. 249, 66 Am.
St. Rep. 740, tends to sustain their position in this
case.    It does tend strongly to support them; but,
when properly construed, it is not in conflict with the
cases cited above.    In that case one John Rodgers
conveyed to Mathias Wright a certain tract of land
in Tennessee.    In the deed Rodgers reserved to him-
self, his heirs and assigns, "all mines, minerals and

metals in and under the land.'' In that case there was no reservation of any easement or privileges, as in the case at bar and the ones cited above; and, as stated in all the cases, the word ''minerals'' technically included oil and gas, and it was presumed in that case that the parties intended to reserve just what the words included. There were no other words used in the conveyance, as in the case at bar and the ones above cited, to show a different intention.

Appellants also claim that the case of Dunham v. Kirkpatrick, supra, was overruled by the latter case of Gill v. Weston, 110 Pa. 313, 1 Atl. 921. That action was brought for the recovery of an engine and belt which had been removed from the oil leasehold by Curtis, the lessee. The question before us was not under consideration in that case, and was not referred to, except in the last few lines of the opinion, and upon the subject as to whether a lease for oil could be mortgaged. The court said that oil was a mineral, and was obtained by mining, and was a subject of a mortgage under the act of 1855 (P. L. 369), which made it lawful for a lessee for a term of years of mining lands to mortgage the same. The court made no reference to its former decision of Dunham v. Kirkpatrick, supra. It was not said in the Dunham-Kirkpatrick case that oil was not a mineral, but it was said that it was. However, the court, in construing the language used in the deed under consideration in that case, decided that the parties did not intend to pass the title to the oil. There is no real conflict between the cases.

Under the authorities referred to and all the facts in this case, we are of the opinion that appellants did not obtain by their conveyances the natural gas under the lands described therein.

Therefore the judgment of the lower court is affirmed.