## LOVELACE et al. v. SOUTHWESTERN PETROLEUM CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   June 8, 1920.)

No. 3353.

1. **Mines and minerals ⊕48—"Minerals" include oil and gas.**
   The term "minerals," in its popular and ordinary sense, includes petroleum oils and gas.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mineral.]

2. **Mines and minerals ⊕55(5)—Reservation of "minerals" includes oil and gas.**
   Kentucky follows the generally accepted rule that a conveyance or reservation of minerals includes oil and gas.

3. **Mines and minerals ⊕55(2)—Conveyance held to pass minerals.**
   Where the grantor owned only one-half of the minerals under land, a deed including one-half of the coal and all other metal or mineral substances, the habendum clause of which recited the grantee was to hold the parcel, except one-half of the minerals, which the grantor did not own, was a conveyance of the mineral rights.

4. **Mines and minerals ⊕54(1), 55(1)—Oil and gas are proper subjects of grant or reservation.**
   Oil and gas in the ground are proper subjects of grant or reservation.

5. **Mines and minerals ⊕55(6)—Easements are implied in reservation of oil and gas rights.**
   The easements of access implied in a simple grant or reservation of minerals are applicable to a reservation of grant of oil and gas rights.

6. **Evidence ⊕461(1)—Clear language will not be overthrown, because one of the parties intended other meaning.**
   While, in considering words used by way of conveyance or reservation, account will be taken of the circumstances under which the agreement was made, the otherwise clear and unambiguous meaning of words may not be overthrown by testimony that the parties, one or both, intended a different meaning.

7. **Mines and minerals ⊕55(8)—General reservation of oil and gas not precluded by fact that exception was made in other deeds.**
   That the grantor in other deeds reserving mineral rights excepted oil and gas does not show that his reservation of one-half of the mineral rights without specification did not include oil and gas, and that the parties so understood the conveyance.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by Ollie Lovelace and others against the Southwestern Petroleum Company and others.   From a judgment for defendant (267 Fed. 504), plaintiffs appeal.   Affirmed.

J. W. M. Stewart and S. S. Willis, both of Ashland, Ky. (Willis & Davis and Hager & Stewart, all of Ashland, Ky., on the brief), for appellants.

Stephen T. Davis, of Winchester, Ky., and Robert H. Winn, of Mt. Sterling, Ky. (Benton & Davis, of Winchester, Ky., Worthington, Cochran, Browning & Reed, of Maysville, Ky., and John A. Judy, of Mt. Sterling, Ky., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPPEN, Circuit Judge. This is a suit to recover the oil and gas rights in certain parcels of land in Lee county, Ky. The controversy arises thus: On January 4, 1908, the Miller's Creek Lumber Company conveyed to John S. Robinson a tract of 2,000 acres, excepting therefrom 148 acres, known as the Malin Jones parcel. The deed of conveyance in terms reserved "a one-half undivided interest in all the minerals in, on, or under the land embraced by this conveyance." Prior to December 8, 1910, Robinson and wife conveyed to one McIntosh 50 acres of the land without reservation, and to D. B. Pendergrass two parcels, aggregating 590 acres, as to which one-half the coal was reserved. They also made to various other parties separate conveyances of other portions of the land, aggregating several hundred acres, reserving all minerals, oil, and gas. On the last-mentioned date Robinson and wife conveyed to Pendergrass the remainder of the original tract, by deed containing this further provision:

"The said D. B. Pendergrass is hereby deeded one-half of all the coal in said boundary above mentioned [the original 2,000-acre tract] and also one-half of all the minerals, metals, and mineral substances of every kind and character on, in, or under said above-described boundary, except" the Jones, McIntosh, and two Pendergrass parcels before mentioned.

Defendants respectively claim title to an undivided one-half interest in the oil and gas rights in separate portions of the tract through deeds from Pendergrass based on Robinson's deed of December 8, 1910. Plaintiffs claim to own, as heirs at law of Robinson, the entire of the oil and gas rights, on the theory that no effective reservation of one-half of such rights was contained in the lumber company's deed to Robinson, and that the latter's deed to Pendergrass. of December 8, 1910, was ineffectual to convey any interest therein. Upon trial by jury, the court, being of opinion that the lumber company's deed to Robinson effectually reserved, and that the latter's deed to Pendergrass of December 8, 1910, effectually conveyed, an undivided one-half of the oil rights in question, directed verdict for defendants. That action was rested upon this reasoning:

The word "minerals" in its ordinary and popular sense, includes petroleum rights; the broad term "all the minerals on, in, or under" a given parcel of land, when used in a deed, by way of either reservation or conveyance, and without qualifying or limiting language, clearly and unambiguously embraces petroleum rights; and that in neither the deed from the lumber company to Robinson nor in that from Robinson to Pendergrass of December 8, 1910, is there anything qualifying or limiting the ordinary meaning of the term in question.

[1] That the word "minerals," in its ordinary and popular sense, includes petroleum rights, is too firmly established to admit of substantial controversy. The question has more than once come before the Supreme Court of the United States in construing land grants from which "mineral lands" were in terms excluded. In Northern Pacific Ry. Co. v. Soderberg, 188 U. S. 526, 534, 23 Sup. Ct. 365, 368 (47 L. Ed. 575), where land chiefly valuable for granite quarries was held to be "mineral land," although not metalliferous, reference was made to the rulings of

the Land Department that the words "valuable mineral deposits" should be construed as including "all lands chiefly valuable for other than agricultural purposes, and particularly as including nonmetallic substances, among which are held to be * * * diamonds, * * * petroleum * * * and coal." Reference is also made with apparent approval to the decisions of the Pennsylvania courts holding both petroleum and natural gas to be mineral, as well as (188 U. S. 536, 23 Sup. Ct. 369, 47 L. Ed. 575) to the "overwhelming weight of authority to the effect that mineral lands include, not merely metalliferous lands, but all such as are chiefly valuable for their deposits of a mineral character, which are useful in the arts or valuable for purposes of manufacture."

Burke v. Southern Pacific Co., 234 U. S. 669, 34 Sup. Ct. 907, 58 L. Ed. 1527, involved the question whether petroleum or mineral oil was within the meaning of the term "mineral," as used in certain acts of Congress reserving mineral lands from railroad land grants. In answering this question in the affirmative, there were cited the decisions of courts of Pennsylvania, West Virginia, Ohio, Tennessee, and New York, affirming the mineral character of petroleum, and attention was called to the fact that Congress had at different times spoken of it as a mineral, and that the Supreme Court of the United States had done the same in Ohio Oil Co. v. Indiana, 177 U. S. 190, 202, 20 Sup. Ct. 576, 44 L. Ed. 729, and (234 U. S. 679, 34 Sup. Ct. 911, 58 L. Ed. 1527) adverting to the apparent disagreement among scientists as to whether petroleum was strictly a mineral, or merely a "resultant of the decomposition of organic matter under certain conditions of temperature and pressure, and therefore not a mineral," the court, without passing upon that question, held that the words "mineral lands" should be applied in their ordinary and popular sense, and that in that sense petroleum lands were embraced therein. This holding was renewed in United States v. Southern Pacific Co., 251 U. S. 1, 40 Sup. Ct. 47, 64 L. Ed. ——.

The courts of the oil-bearing states, so far as we are advised, now generally, if not uniformly (so far as they have spoken), hold that petroleum and natural gas in place are minerals and part of the realty, and, with the exception of Pennsylvania, that a reservation or conveyance of "all minerals," or "all mineral rights," in land, not otherwise limited or qualified, so as to show a different intention, embraces petroleum and natural gas.

Isom v. Rex Crude Oil Co. (1905) 147 Cal. 659, 661, 82 Pac. 317, 318: "Oil is a mineral, and as a mineral is part of the realty." Kelley v. Ohio Oil Co. (1897) 57 Ohio St. 317, 49 N. E. 399, 39 L. R. A. 765, 63 Am. St. Rep. 721: "Petroleum oil is a mineral, and, while it is in the earth, it forms a part of the realty." People v. Bell (1908) 237 Ill. 332, 337, 86 N. E. 593, 594 (19 L. R. A. [N. S.] 746, 15 Ann. Cas. 511): "In some of the states petroleum forms a very valuable part of the natural wealth, and has been given careful consideration by the courts, and they have uniformly held, so far as the authorities we have examined show, that it should be classed as a mineral." An oil and gas lease was held taxable as "a mining right," and included in the

statutory term "other mineral." Lanyon Zinc Co. v. Freeman (1904), 68 Kan. 691, 696, 75 Pac. 995, 997 (1 Ann. Cas. 403): "Whatever may be the origin of petroleum and natural gas, and the question appears as yet to be matter of controversy; it is well settled that they are minerals."

In Murray v. Allred (1897) 100 Tenn. 100, 43 S. W. 355, 39 L. R. A. 246, 66 Am. St. Rep. 740, the question is elaborately considered, and the conclusion announced that petroleum oil and natural gas are minerals, within a reservation by deed of all "mines, minerals and metals in and under the land." Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 819, 178 S. W. 1084: "It is well settled that oil and gas are minerals, and are a part of the realty. * * *" In Sult v. Oil Co. (1908) 63 W. Va. 317, 325, 61 S. E. 307, 311, it is said: "Legally and scientifically, oil and gas are universally held to be minerals. At the present time, they are popularly so considered"—and upon careful consideration and discussion of the authorities it was held (63 W. Va. 324, 61 S. E. 310) that a clause in a deed reserving to the grantor the "right to all minerals in and under" a certain portion of the land conveyed, not limited or qualified as to intention by any clause of the deed, or by any facts within the knowledge of the parties which may properly be deemed to have determined their intention, saves to the grantor, not only solid minerals, but petroleum oil and natural gas. In Barker v. Campbell, etc., Co. (Okl. 1917) 167 Pac. 468, L. R. A. 1918A, 487, it was held that oil and gas are minerals within the meaning of a reservation by deed "of all mineral rights" upon the land described therein. And see Ontario Natural Gas Co. v. Gosfield, 18 Ont. App. Rep. 626.

The original decision of the Supreme Court of Pennsylvania to the contrary effect—Dunham v. Kirkpatrick (1882) 101 Pa. 36, 43, 47 Am. Rep. 696—is rested upon the proposition that while petroleum is a mineral, yet in popular estimation it is not so regarded, and therefore would not be embraced within the reservation of "all minerals." Its doctrine has been reaffirmed in Silver v. Bush, 213 Pa. 195, 198, 199, 62 Atl. 832, and in Preston v. South Penn Oil Co., 238 Pa. 301 et seq., 86 Atl. 203. In both these later decisions the fact that Dunham v. Kirkpatrick has become a rule of property in Pennsylvania, and that many land titles rest upon it, is emphasized. Dunham v. Kirkpatrick seems not to have been followed by the courts of any other state, except to the limited extent hereafter stated. It has been more than once disapproved. See Weaver v. Richards, 156 Mich. 320, 324, 120 N. W. 818; Sult v. Oil Co., supra, 63 W. Va. at page 325, 61 S. E. at page 311; Murray v. Allred, supra, 100 Tenn. at page 116 et seq., 43 S. W. 355, 39 L. R. A. 246, 66 Am. St. Rep. 740; McCombs v. Stephenson, 154 Ala. 109, 113, 44 South. 867.

Detlor v. Holland (1898) 57 Ohio St. 492, 49 N. E. 690, 40 L. R. A. 266, is not, in our opinion, opposed to the general rule we have stated respecting the construction of the words "all the minerals," when not otherwise qualified or limited. In that case it was held that petroleum oil and natural gas were not covered by a conveyance of "all the coal of every variety and all the iron ore, fire clay, and other valuable minerals in, on, or under" the described premises, coupled with "the

right in perpetuity" to the grantee or his assignees "of mining and removing such coal, ore, or other minerals," and with the right in the grantee or his assignees to "the use of so much of the surface of the land as may be necessary for pits, shafts, platforms, drains, railroads, switches, side tracks, etc., to facilitate the mining and removal of such coal, ore or other minerals and no more." As aptly said in Sult v. Oil Co., supra, 63 W. Va. at page 325, 61 S. E. at page 311:

"This decision was based partly on Dunham v. Kirkpatrick, and partly on the view that other clauses of the deed, providing for rights of way and giving mineral privileges, disclosed intention not to include oil."

[2] We thus come to the controlling question whether the law of Kentucky is opposed to the general rule we have stated. The first decision in that state upon this subject is McKinney's Heirs v. Central Ky. Natural Gas Co. (1909) 134 Ky. 239, 120 S. W. 314, 20 Ann. Cas. 934. In that case three conveyances were involved. In the first the mineral rights were described as the—

"whole entire right, title, and interest in all minerals such as coal, iron, silver, gold, copper, lead, bismuth, antimony, zinc, or any other mineral of any marketable value contained within the following boundary of land, * * * with the right to explore, prospect, mine, and dig upon any of said land for any of the above minerals, or any other of any marketable value, together with the right of timber, stone, or any other material necessary for improvements for mining, to sink shafts, open drifts, or do anything else on said land necessary to the development of said minerals."

In the second the description was:

"All the coal and mineral interests and privileges, together with the right of way to and from all the mines or openings; also the right to open mines for and develop the same, with a sufficiency of timber for mining purposes and the construction of cabins for miners."

In the third case the description was:

"One-half of all the mineral or coal on the above-described boundary, with all necessary timber and coal yards and rights of way."

The only question was whether the conveyances referred to included natural gas. This question was answered in the negative (134 Ky. 246, 247, 120 S. W. 314, 316 [20 Ann. Cas. 934]), upon the ground that, while the words "other minerals," or "other valuable minerals," taken in their broadest sense, would include natural gas, an intention not to include it was shown by the fact that at the time of these conveyances (1871–77) natural gas had no marketable value in Kentucky, and that the easements granted in connection with the mineral rights conveyed "are not applicable to the production of natural gas, which shows that it was not intended that gas was to be included in the conveyances." While both Detlor v. Holland, supra, and Dunham v. Kirkpatrick, supra, were cited as in point, Murray v. Allred, supra, was held not to conflict with the cases cited by the Kentucky court, for the reason that in the Allred Case the deed of reservation was of "all mines, minerals and metals in and under the land," without any—

"reservation of any easement or privileges, as in the case at bar and the ones cited above; and, as stated in all the cases, the word 'minerals' technically included oil and gas, and it was presumed in that case that the parties intend-

ed to reserve just what the words included. There were no other words used in the conveyance, as in the case at bar and the ones above cited, to show a different intention."

The McKinney Case is plainly not opposed to the general rule we have stated above. As has already appeared, Murray v. Allred, so distinguished in the McKinney Case, directly sustains the conclusion of the court below in the instant case. The Court of Appeals of Kentucky has since spoken upon this subject. In Ky. Diamond Mining & Devpt. Co. v. Ky. Transvaal Diamond Co., 141 Ky. 97, 132 S. W. 397, Ann. Cas. 1912C, 417, the question presented was whether diamonds were included within a description of "all the mineral and timber on the following described tract or parcel of land," with certain exclusions and reservations not specially important. It was held that diamonds were included in the broad term "minerals." Replying to a contention that, while a diamond is a mineral, the description should not be held to include diamonds, because no one had in mind diamonds being on the land when the deed was made, the case of McKinney's Heirs v. Central Kentucky Co., supra, was distinguished, for the reason that the words "other minerals" in the description in issue in that case were "to be read in connection with the things previously named, and must be confined to things of that character"; the court adding:

"The deed here simply conveys 'all the mineral.' These words aptly include every kind of mineral found on the land. * * * When the language of the deed is broad enough to cover everything that may be found on the land, it is not material to the effect of the deed that the parties in fact contemplated at the time that a particular thing might be found on the land;" and, further, that where a grantor "conveys all the mineral, the court must enforce the contract according to the natural meaning of the language used."

The McKinney Case was thus distinctly construed as in the ejusdem generis class. But whatever doubt might be thought to remain respecting the rule in Kentucky, and the construction of the McKinney Case, was removed by Scott v. Laws, 185 Ky. 440, 215 S. W. 81, decided since the instant case was decided below. That case involved the question whether oil and gas passed under a conveyance of "all of the mineral right and coal privileges and rights of way to and from said minerals and coal privileges, also the right to search for all undiscovered minerals and coals upon the lands hereinafter described." The question was answered in the affirmative. The McKinney Case was here again distinguished as being in the ejusdem generis class. The Kentucky Diamond Case, supra, was also cited in that connection. The opinion in Scott v. Laws closes with this pregnant statement:

"Since oil and gas are minerals, and there is nothing in the language of the deed in question which shows that the parties contemplated something less general than all substances legally cognizable as minerals, we conclude that the title to the oil and gas necessarily passed by the conveyance."

This decision, in our opinion, conclusively sustains the correctness of the decision below, for there is nothing in the language of either the deed from the lumber company to Robinson, or in that from the latter to Pendergrass, which shows "that the parties contemplated something less general than all substances legally cognizable as minerals." Neither

contains any words of limitation. The language of the deed *to* Robinson, "all the minerals in, on, or under the land," is absolutely without qualification anywhere. The words in the deed *from* Robinson, "all the minerals, metals, and mineral substances of every kind and character on, in, or under said above described boundary," have no tendency to limit the minerals to those of a metalliferous nature. It is difficult to conceive of general language more comprehensive than that last quoted, especially in view of its final and sweeping clause. Nor do we find elsewhere in Robinson's deed to Pendergrass anything throwing doubt upon the meaning of the words we have been considering, and there is no evidence that petroleum and natural gas had then no market value in Kentucky. Such testimony, indeed, would run counter to general public knowledge.

[3] We may add that we see no merit in the contention that in the deed from Robinson to Pendergrass "apt words" were not used to convey the oil and gas reserved and severed from the surface estate in the several deeds Robinson had previously made. Following the words of conveyance we have already quoted in the opening paragraphs of this opinion, specific exception is made in the deed of each of the several parcels of land so previously conveyed, in practically all of which minerals, oil, and gas had been reserved. Immediately thereafter is the following:

"The coal in each of the above exceptions which have been heretofore sold was reserved, except in deeds which were made to Millard McIntosh, Malin Jones, and two deeds to D. B. Pendergrass, and one-half of said coal and all other minerals, metals, or mineral substances on, in, or under all the foregoing exceptions, except Millard McIntosh, Malin Jones, and two deeds to D. B. Pendergrass, is hereby conveyed to D. B. Pendergrass in this deed."

The habendum clause reads:

"To have and to hold the same [the 2,000-acre tract], together with all appurtenances thereunto belonging (except one-half of the minerals [which Robinson never owned] under the entire tract of 2,000 acres, more or less, and all of the coal and minerals under the lands heretofore sold to D. B. Pendergrass, Malin Jones, and Millard McIntosh, also subject to all exceptions for land heretofore sold out of said 2,000 acres, more or less, to the parties herein named), unto the party of the second part, his heirs and assigns, forever, with covenant of general warranty."

These provisions of the deed, considered together, in our opinion clearly indicate that Robinson intended to pass to Pendergrass all his mineral rights, including oil and gas, which he had reserved in former conveyances. Kincaid v. McGowan, 88 Ky. 91, 4 S. W. 802, 13 L. R. A. 289, contains nothing in our opinion to the contrary.

[4] We see no force in the further contention that oil and gas in the ground are not proper subjects of a grant or reservation. The authorities are distinctly otherwise.

[5] We must also reject, as applied to this case, the proposition that the easements implied in a simple grant or reservation of minerals are not applicable to oil and gas. The lumber company's conveyance to Robinson passed the fee of the land, together with all mineral rights, except those expressly reserved. Robinson thus acquired complete right to mine one-half the minerals so conveyed. These rights never

passed from him until the conveyance to Pendergrass, which as matter of law vested in the latter the ownership (to the extent of one-half) of all the minerals which the latter and his grantee should find and reduce to possession. If Robinson could effectively reserve such easements by the mere reservation of mineral rights contained in the deeds of the surface we have been considering, he could as effectively pass them in the same way; and unless such reservation was effective plaintiffs are not interested in this question.

[6, 7] The court did not err in rejecting the deeds by the Miller Lumber Company and by Robinson, respectively (made subsequently to the former's deed to the latter), which were offered by plaintiffs in support of their construction of the term "minerals," as contained in the lumber company's deed to Robinson of January 4, 1908. The rule is too well settled to justify citation of authority that while, in considering words used by way of conveyance or reservation, account will be taken of the circumstances under which the agreement was made, yet that the otherwise clear and unambiguous meaning of words may not be overthrown by testimony that the parties, one or both, intended a different meaning. The Case of McKinney's Heirs is not authority for the proposition that the meaning of clear and unambiguous words of conveyance may be varied by proof of wholly extraneous facts and circumstances. This appears from the discussion already made of this case. The same is true of our decision in Kentucky Block Cannel Coal Co. v. Sewell, 249 Fed. 840, 162 C. C. A. 74, 1 A. L. R. 556. Titles to real estate may not be so impaired or defeated.

In so saying we must not be understood as recognizing that the offered deeds have the evidential effect which plaintiffs claim for them. In one of the lumber company's deeds (that to Jones) the exception was of "oil and minerals"; in another (to Robinson), "one-half the coal"; in the third (also to Robinson), of "one-half of the coal and all other minerals." In several of Robinson's other deeds the exception was of "minerals, oil and gas"; in others, of "coal, oil, and gas and minerals," with differing arrangement of the nouns; in another, of "one-half of all the coal"; in another of "coal, oil, gas, and all other minerals and metals." These deeds, considered singly or collectively, have, in our opinion, no substantial tendency to show that at the date of the *previous* conveyance from the lumber company to Robinson the minds of the grantor and the grantee met in an understanding that "minerals" did not include oil and gas, which would mean that the lumber company reserved no oil and gas. Whether the language of such subsequent deeds was prompted by excessive caution, or by suggestions of draftsmen, or resulted from mere tautology, is not important.

The judgment of the District Court is affirmed.