**ROWE et al. v. CHESAPEAKE
MINERAL CO.**

**No. 58.**

District Court, E. D. Kentucky.
July 30, 1945.

O. T. Hinton, of Pikeville, Ky., for plaintiffs.

LeWright Browning, of Ashland, Ky., for defendant.

SWINFORD, District Judge.

This action involves the title to the oil and gas rights in and to a tract of land containing approximately 1100 acres, situated in Pike County, Kentucky. In August, September and October, 1887, one John J. Stuart went into the locality of the land in question and took deeds for the mineral rights in several tracts of land. These deeds were prepared by John J. Stuart and were on a printed form. Each of the deeds contained the following language in the granting, habendum and warranty clauses, "coal, salt water, oil gas, and minerals".

The deed involved in this case was executed on October 14, 1887, by William H. Reynolds, Orlando Reynolds, Andrew Adkins, and their wives, all of whom signed their names by mark. This deed is the only one with which we are concerned here and will be referred to as the Reynolds deed.

There was one distinction between the Reynolds deed and all of the other deeds to

the adjacent and neighboring tracts of land. In the Reynolds deed there was a line drawn through the words "salt water, oil, gas". A photostatic copy of the original deed is in the record and for clarity I will quote from that deed, indicating the lines as they appear:

The granting clause of the deed is as follows:

"The said parties of the first part do hereby sell and convey to the said party of the second part all the coal, salt water, oil, gas, and minerals, lying and upon and under our farm," etc.

The habendum clause of the deed is as follows:

"To have and to hold unto the said party of the second part, his heirs and assigns, forever, with the right of said John J. Stuart, Trusteee, his heirs or assigns of entry to mine said coal, salt water, oil, gas, and mineral, with all the usual mining privileges; reserving to ourselves the fee simple to the surface of said farm," etc.

The warranty clause is as follows:

"The parties of the first part warrant generally the title to the coal, salt water, oil, gas, and mineral hereby sold."

All parties to this action claim the title to the salt water, oil, gas through William H. Reynolds, Orlando Reynolds and Andrew Adkins. The defendant acquired whatever rights and interests it now owns by mesne conveyances from John J. Stuart, Trustee. The original plaintiff, G. C. Rowe, and the intervening petitioners claim through later conveyances but through these same grantors.

The sole question involved is whether or not John J. Stuart, Trustee, acquired the salt water, oil, and gas in the 1100 acre tract by his deed of October 14, 1887.

There is an additional fact which should be stated for the sake of clarity. When the deed was lodged for record in the office of the Clerk of Pike County, in recording the deed, the clerk erroneously failed to record the instrument as it appeared on its face and did not record the words, "salt water, oil, gas", evidently considering that since they had lines drawn through them, they were not a part of the deed.

The determination of this case rests upon a very narrow issue and that is, does the appearance of this deed indicate what was in the minds of the parties at the time it was executed? Does that intention bind a bona fide purchaser?

There are many rules of construction. Much has been said in briefs and many authorities cited, but I do not see that it would serve any good purpose to indulge in an academic discussion of the laws of contracts as they deal with the construction of instruments or to quote from the many authorities found in textbooks, encyclopedias, or from reported cases from this and many other states, as well as from the Federal Courts. This case must rest on its own facts. No similar case can be found.

From the appearance of the instrument it is clear to me that the grantors in the deed of October 14, 1887, expressly intended to reserve the salt water, oil and gas, and to assist them in carrying out this intention, the grantee, or his agent, struck out the words, "salt water, oil, gas" by drawing a line through them. All of the other grantors of the mineral rights used the printed forms of deeds, which were provided for them by the grantee, conveying all of their mineral rights including salt water, oil, and gas, but here was the special case, which stands out like a light. It is obvious that the parties here intended the unusual. It is manifest that a different kind of instrument was intended by the contracting parties. There can be no other explanation, and no evidence has been offered that can overcome this intention as presented by the written instrument.

It is very true that in determining what this intention was the court cannot ignore the language of the instrument or imply words not used. To do so would be to substitute the court's contract for the contract of the parties. However, in determining what this intention was and in applying these rules of construction as guiding the court to the correct intention, all things which appear on the face of the instrument may be considered. These "things" may be marks, erasures, deletions, or lines drawn through words. As stated in the case of Maynard et al. v. McHenry et al., 271 Ky. 642, 113 S.W.2d 13, it is only where the language of the grant is ambiguous that extrinsic evidence is admissible and if there are no restrictive words, a conveyance or passage of minerals will include oil and gas. I do not think that the term "ambiguous" should be applied to language alone but to anything

which might appear from the instrument that calls for an explanation or leaves the mind in some doubt as to what the parties intended. While the opinions use the word "language" they certainly do not mean to exclude other indications appearing on the face of the instrument.

There is nothing ambiguous in the language here used. The ambiguity arises when the words are stricken out by a pencil or pen mark through them. The words left in and not stricken are not ambiguous but the words stricken out with a pencil or pen are ambiguous and subject to explanation by extrinsic evidence. The mere fact that oil and gas had not been discovered in the vicinity of the land conveyed or was unknown at the time the deed was executed does not alter the case. Maynard et al. v. McHenry et al., supra.

The doctrine ejusdem generis has no application here. The word "minerals" and four kinds of minerals, coal, saltwater, oil, gas, were expressly named and then before the instrument was executed or at least simultaneously with its execution, certain of these minerals named were stricken out of the instrument. It is generally accepted as a rule of evidence that if nothing appears to the contrary the alteration will be presumed to be contemporaneous with the execution of the instrument. Greenleaf on Evidence, 16th Edition, page 702.

Where an erasure, interlineation, or alteration appears it seems to be the better opinion (in pursuance of the maxim, omnia rite acta praesumtur), that the presumption is that all of the changes were made before the execution of the writing. In 17 Corpus Juris Secundum, Contracts, pp. 734, 735, § 317, it is said that: "Contracts must be construed with reference to the words which they contain, and words which have been erased or crossed out are not, under some authorities, to be considered; it has been said, however, that such words may be considered in ascertaining the intention of the parties where the contract is ambiguous." This text cites the case of Curtis v. M. L. Virden Lumber Co., 159 Miss. 454, 132 So. 341. I do not have this case before me and of course do not know that it holds as the text states, but assuming that it does, it is good authority on the question presented here. This is an ambiguous contract. The words put in it and then stricken out make it ambiguous. Since it is ambiguous it would be essentially

unjust and unfair to ignore the facts appearing on its face. While I again call attention to the fact that the authorities in Kentucky speak of ambiguous language, I cannot conclude that they have narrowed the rule of construction to mean only language and not contract as it appears in its full context.

As is well said in the case of Combs et al. v. Combs et al., 292 Ky. 445, 166 S.W.2d 969, 970, quoting from the case of Combs v. Fields, 211 Ky. 842, 278 S.W. 137, 138: "If the intention of the parties can be ascertained, it must control. The intention is gathered from the entire instrument, giving proper effect if it can be done to each and every part, and considering all of the clauses without reference to the place at which they appear in the instrument." See also McKinney's Heirs v. Central Kentucky Natural Gas Co., 134 Ky. 239, 120 S.W. 314, 315, 20 Ann.Cas. 934, from which I quote as follows:

"'This rule is of especial importance when the question arises whether a specific mineral is included in a general designation.' The words 'other minerals,' or 'other valuable minerals,' taken in their broadest sense, would include petroleum oil; but the question here is: Did the parties intend to include such oil in the mining right? Taking all the terms of the conveyance in the light of the surrounding circumstances, and in view of the above rule of construction, and upon authority of the case of Dunham & Short v. Kirkpatrick, 101 Pa. 36, 47 Am.Rep. 696, we conclude that the title to the oil did not pass under said conveyance, but remained in the owner of the soil, and upon his death passed to his heirs. There is nothing to show that it was the intention of the parties that oil should be included in the word 'minerals,' and the easements granted in connection with the mining right are not applicable to producing oil, and show that oil was not intended to be included in the conveyance. If it had been, apt words would have been used to express such intention."

The best statement of the rule to be applied to the facts presented by the record in this case is found in Hudson & Collins v. McGuire, 188 Ky. 712, 223 S.W. 1101, 1102, 17 A.L.R. 148. I quote:

"As said in 8 R.C.L., p. 1041, 'The tendency of modern decisions is to disregard technicalities and to treat all uncertainties

in a conveyance as ambiguities, subject to be cleared up by the resort to the intention of the parties as gathered from the instrument itself, the circumstances attending and leading up to its execution, the subject-matter and the situation of the parties as of that time.' To the same effect is 18 Corpus Juris, p. 279."

I am not impressed with the testimony of Mr. Dallas Justice or Mr. M. L. Hanks, in which they state that in 1941 they visited Orlando Reynolds at his home on Grapevine Creek; that at that time Mr. Reynolds was a man in his nineties and in bed. Mr. Reynolds, at this time, owned about 25 acres of what had originally been the approximately 1100 acres in question. According to the testimony of the witnesses he stated that he did not own any minerals under this land as he had long since sold all the minerals. The testimony is so vague that it is of little evidential value.

Notwithstanding the fact that it was the intention of the grantors at the time of the execution of the deed in question to expressly reserve the salt water, oil and gas, a determination of this question does not satisfy ·the justice of this case. The defendant and its immediate predecessor in title according to the record, are innocent purchasers for value. The defendant acquired its title in 1907 from the C. & O. Railway Co. The railroad company acquired its title in 1906 from the Big Sandy Company. The deeds from the Big Sandy Company and from the railroad company to the defendant included, in addition to the 1100 acre tract, several other tracts of land, among them those mentioned in the statement of facts as having been conveyed to John J. Stuart, Trustee, at or about the time of conveyance of the Reynolds tract.

It is urged by the plaintiffs that since all of these tracts were acquired at the same time, the purchaser must have noticed the difference between the deed from Reynolds, etc., to Stuart and the other deeds to Stuart and was thereby put on notice by the courthouse record that the salt water, oil and gas were excepted from the Reynolds tract. That being the case the purchaser should then have made further enquiry and demanded the original deed. I cannot agree with this reasoning. In examining the title to real estate, it is placing too great a burden to require the examiner to compare the various deeds with each other. Such reasoning as is advanced by the plaintiffs here on this question is to place an inference upon an inference and deduct from that the fact that the defendant had actual notice of the intention of the parties at the time of the execution of the Reynolds deed. It is the whole purpose of our recording statutes to enable a purchaser, by examining the record in the Clerk's office, to determine what kind of title he is acquiring to an interest in real estate. He is not required to examine the original deed. If this were the case it would be totally impossible to carry on any business transactions wherein the title to real estate was involved. In this connection I quote the following pertinent statement from Hudson & Collins v. McGuire, supra:

"Adopting the views expressed in the authorities referred to, which are in harmony with our own views of the matter, it is very clear that as between Fraley and Casto, or volunteers claiming under or through them, it would be competent to show by extrinsic evidence that it was not intended by either of the parties to the conveyance that oil or gas rights and privileges should pass under a grant. But a different question arises when a controversy comes up between purchasers for value as to the meaning and construction of a deed in the chain of title under which both of them claim, as in this case. It is of course, of the highest importance that the stability and integrity of conveyances on which the right and title to practically all landed interest depends should be carefully preserved, and especially is it indispensable to the safety of purchasers for value, who have the right to look to and be governed in their dealings by the words of the recorded instrument, that nothing should be said by courts of last resort that would cast doubt on the sufficiency of a grant that on its face is free from obscurity or doubt.

"It is equally plain that it would be destructive of the security of deeds if the rights of purchasers for value should be made to depend on the intention in the mind of remote vendors that was not expressed in the conveyance, and of which intention they had no actual notice.

"A purchaser for value without actual notice of an infirmity in a conveyance in his chain of title need only look to the recorded instruments, and, if they are fair on their face and free from ambiguity, he may rest assured that the safety of his

title will not be affected by the intention of the parties to instruments of which he does not have actual notice and which is not expressed in the instrument itself."

The question here is most difficult. It is well reasoned that since it was not the intention of the parties to convey the salt water, oil, and gas, as I have held, consequently no title could pass and that the title to the salt water, oil and gas remained in W. H. Reynolds, and others, at the time of the execution of the deed of October 14, 1887. I think, however, that in the light of all the circumstances disclosed by this record that the defendant here, as an innocent purchaser, should not bear the loss occasioned by the ambiguity in the deed. The real difficulty, of course, is occasioned by the failure of the Clerk of the Pike County Court to record the instrument as it appears on its face. That would then have placed all subsequent purchasers on notice and no one could have claimed to be an innocent purchaser. This error on the part of the Clerk has occasioned a loss. This loss must fall upon someone. Should it fall upon the innocent purchaser whose examination of the record revealed to him that coal and minerals were conveyed by the deed of 1887 and who had knowledge that the Courts of Kentucky had declared such terms to include all minerals, or should it fall upon the grantor who placed this instrument in the channels of trade, even though innocently believing that he was only conveying the coal and hard minerals?

I must conclude that this is a case which calls for the application of the doctrine of equitable estoppel. It is a well-recognized rule of equity that whenever, by his conduct or declaration, one has induced another to act upon the belief in certain facts, he shall not thereafter deny the truth of such facts to the prejudice of the other. The reasoning upon which this rule is based is that where one party has induced another to act, or to refrain from action, upon a representation he should not thereafter be permitted to deny the truth of his representation.

It is a necessary element in all estoppels of this character either that the parties intended to mislead and deceive the other or that the natural consequence of their conduct was to mislead and therefore they were guilty of such negligence as is equivalent to a constructive fraud.

There must be either a fraudulent intent or gross negligence which causes a loss to an innocent party. Equitable estoppels have been called estoppels in pais because they are created entirely by the conduct of the party. They are called equitable estoppels because formerly they were recognized and enforced only in equity. That, however, is not true of later cases. John Shillito Co. v. McClung, C.C., 45 F. 778.

The deed here actually stated that it conveyed coal and minerals. The original grantors, were they party plaintiffs, would be estopped to assert claim to the oil, gas and minerals against the present defendant. Their successors in title can stand in no better position. Watlington v. Kasey, 293 Ky. 382, 168 S.W.2d 988; Hargis v. Flesher Petroleum Co., 231 Ky. 442, 21 S.W.2d 818; Ginn's Admx. v. Ginn's Admr, 236 Ky. 217, 32 S.W.2d 971.

This can be termed a conveyance in pais. The rule applicable to the circumstances of this case is comprehensively expressed in 19 Am.Jur. § 87, page 743:

"The rule is well settled in the modern law that the title to land or real property may pass by an equitable estoppel, which is effectual to take the title to land from one person and vest it in another where justice requires that such action be done. Stating the principle in the concrete and negative form in which it is sometimes framed, with the exception of property taken by judicial process, no one can be deprived, without his consent, of real property to which he has the legal title, unless he has estopped himself to assert his title. Thus, by intentional misrepresentation, misleading conduct, or wrongful concealment, a person may preclude himself from asserting his legal title to land or from enforcing an encumbrance on, or maintaining an interest in, real estate. In order to establish an equitable estoppel against one asserting his title to real property, the party attempting to raise it must show an actual fraudulent representation, concealment, or such negligence as will amount to a fraud in law and that the party setting up such estoppel was actually misled thereby to his injury. It must be pointed out, moreover, that in all instances a clear strong case of estoppel must be made out where a clear legal title to land, requiring written conveyance to pass it, is to be divested out of its owners and vested in others as if a conveyance had been made."

To summarize the facts produced by the record here and to bring it within the rule quoted, I find: (1) That the deed from Reynolds and others to Stuart, as it was originally executed, conveyed all coal and minerals. (2) The word "minerals" includes all minerals. (3) That while the grantors may not have intended to convey salt water, oil, and gas, it was their act, even though ignorantly or innocently done, that caused the record on which the defendant, and predecessors in title, were entitled to rely, to indicate that all minerals were included in the conveyance. (4) Had the word "minerals" also been stricken out at the time the deed was executed and launched into the channels of trade, no question of intention could have later arisen. (5) It was through the failure of the original grantors to have this deed reflect the actual contract that the defendants, in acquiring a title, were misled.

I feel that the justice of the case requires that I must therefore conclude that while it was the intention of the grantors to retain the salt water, oil, and gas, nevertheless, through their negligence the defendants and their predecessors in title were misled and there was a conveyance in pais of all minerals and that since the original grantors would be estopped to assert title to these minerals, their successors in title stand in no better position and their complaint should be dismissed.